## George W. Dumond
### v.
## Merchants National Bank.

*Banks—Deposits—Application of—Private Funds—Privity.*

One bank is not liable to an individual for money delivered to it by a second bank, accompanied by a deposit ticket directing that the same be placed to the credit of a third bank, in the absence of notice that the funds in question belonged to such person.

[Opinion filed May 8, 1889.]

Appeal from the Superior Court of Cook County; the Hon. Joseph E. Gary, Judge, presiding.

Messrs. Peckham & Brown, for appellant.

We assert that as this money was the plaintiff's, as it was deposited with the Merchants National Bank for the credit of the Exchange Bank of Earlville, as it was by the Exchange Bank of Earlville admitted to be plaintiff's and ordered turned over to him, and as it does not appear that, upon the faith of the

deposit to the credit of said Exchange Bank and before notice of the plaintiff's rights, the Merchants National Bank had made any disbursements for said Exchange Bank or altered its position with relation to said Exchange Bank at all, the plaintiff can recover.

We are ready to admit that as to any disbursements for the Exchange Bank made in good faith by the Merchants Bank, on the credit of the deposit to the account of said Exchange Bank, the Merchants National Bank would be protected. But this protection would not extend to a mere appropriation of the money to an antecedent existing debt of the Exchange Bank to it, either before or after the notice, and much less can the Merchants National Bank defend itself from the plaintiff's claim without even pretending to show any disposition of the money, after it was deposited with it.

We cite Van Alen v. American National Bank, 52 N. Y. 1; Pennell v. Deffell, 4 De Gex, M. & G.; Broderick v. Waltham Savings Bank, 109 Mass. 149; Merrill v. Bk. of Norfolk, 19 Pickering, 32; Burtnett v. First National Bank of Corunna, 38 Michigan, 630; Central Nat. Bank v. Conn. Mutual Life Ins. Co., 104 U. S. 54; Solomon v. Nicholas, 113 Ill. 351–7.

In Van Alen v. Am. Nat. Bank, where the court cites with approbation Pennell v. Deffell, the New York Court of Appeals lays down the rule that money deposited in his own name by A, which belongs to B, the deposit being intended for the benefit of B, is B's money, and not A's, (in the case at bar, the money of Dumond, and not that of the Exchange Bank) although the bank had no notice that it was not an ordinary deposit made by A, and B can enforce payment to himself, if the bank has given nothing on the faith of the deposit. Says the court in this case:

" The title of the plaintiff does not depend on whether the bank knew he had a title or not; that rested upon other facts. A notice to the bank might have prevented any transfer or the creation of a lien by the depositor, or prevented the bank from taking or acquiring such lien in good faith, but could not otherwise be necessary or important."

In Broderick v. Waltham Savings Bank the plaintiff, to

avoid attachment, deposited his money in the name of Ellen Whalen. It was held that he could recover the balance remaining to the credit of the account, though Ellen Whalen refused to authorize payment to him.

In Merrill v. The Bank of Norfolk, the court say—treating of the right of the plaintiff in the case of a similar deposit to this, to recover:

"The plaintiff may follow the property, however it may change form or in whosesoever hands it may be found, until his rights be divested by his own act or authority."

In Burtnett v. The First National Bank of Corunna, one Raynale, who was agent for one Burtnett, deposited money of Burtnett's, without his knowledge, in the defendant bank. The bank did not know but that it was Raynale's own money, and after Raynale's death proceeded to appropriate the balance of it (a small portion having been checked out by Raynale in his lifetime), to an antecedent debt owed by Raynale to it. Suit was brought by Burtnett's administrator (Burtnett also having died) for the balance thus appropriated, no recovery being claimed of the amount which Raynale had checked out. The court say: "If decedent owned the proceeds of the bond * * * when Raynale made the deposit, the mere fact (if it is a fact) that the bank officers were ignorant of such ownership, or the mere fact of their formal transfer on the bank books of such proceeds to satisfy the debt due to the bank from Raynale (if there was such a debt), or both facts together, could not extinguish Burtnett's right to recovery as to the fund left in the bank, if capable of being traced. Had it been actually shown that Raynale actually participated in and assented to the appropriation attempted by the bank, the latter being ignorant and without any reasonable notice of decedent's rights, there might be room for other considerations. But we are not aware of any principle which will enable a depository who has received from a trustee or agent a fund belonging in fact to the principal or beneficiary, to appropriate it by his sole act to his own debt held against the trustee or agent, and thereupon to insist that his want of knowledge of the true ownership is sufficient to guard such

inequitable appropriation and bar the real owner from pursuing the fund. On the contrary, the doctrine is well settled that the beneficiary or principal may in such cases follow and claim his own."

In all of the cases we have cited, the general principle for which we contend has been recognized, and a great number of others might be adduced for its support.

Mr. E. A. OTIS, for appellee.

The counsel for the appellant concede at the outset that every point which is relied upon as ground of reversal, has been passed upon adversely in Drovers National Bank v. O'Hare, 119 Ill. 346, after full hearing by the Supreme Court of Illinois, whose decision upon a state of facts conceded to be identical, this court is asked to reverse.

The relation between a bank and its customer is simply that of debtor and creditor. 1 Morse on Banking, 3d Ed., Sec. 298.

In Addison on Contracts, Vol. 1, *p. 371, 8th Ed., the doctrine is laid down as follows: "In a banking account of the ordinary kind between a banker and his customers, it is not competent to any third person to interpose and say that the customer was his agent, and that the banker has contracted with such third party through the medium of such customer, his agent. All checks and money paid into the bank by the customer are, as between the banker and the customer, the checks and money of the customer, whoever may be the real owner of them. If the owner of the cash allows his agent to deal with it as his own, and pay it into the bank in his own name, he has no power over it after it has reached the banker's hands.

In School Trustees v. Kirwin, 25 Ill. 76, the court in a similar case use the following language:

"An important inquiry of a court of equity is, whether property, bound by a trust, has come into the hands of persons who are either bound to execute the trust or to preserve the property for the persons entitled to it. If the cases on this subject are adverted to, it will be found that trusts are en-

forced, not only against those persons who are rightfully possessed of trust property, as trustees, but also against all persons who come into possession of the property bound by the trust, with notice of the trust ; and whoever so comes into possession, is considered as bound with respect to that special property, to the execution of the trust.

" This court held this doctrine in the case of Norton et al. v. Hixon, *post*.

" It is not necessary, if the trusts be moneys, that the particular coin or kind of money, or the individual pieces, shall be identified, in order to pursue it, but its identity as a fund must be preserved so that it can be distinguished from all other money.. * * * The means of ascertaining the identity of this fund having failed, by the money having been mixed and confounded in a general mass of property of the bank, of the same description, the right to pursue it must also fail."

The same doctrine is held in Otis v. Gross, 96 Ill. 612; Phœnix Bank v. Risley, 111 U. S. 125; Marine Bank v. Rushmore, 28 Ill. 463.

These authorities establish the position that the Merchants National Bank was not liable to the plaintiff in this case, entirely independent of the decision of the Supreme Court in Drovers Bank v. O'Hare.   In any event, the trust fund could only be followed in equity, when the rights of all parties can be protected.   The fact that the Earlville Bank, two days after its failure, while its assets were in the hands of a third person, presumably a trustee for its creditors, attempted to turn this deposit into a trust fund, cuts no figure in the case. It was apparently one of the common devices by which an insolvent debtor attempts to give priority to a favored creditor.    The creditors of the Earlville Bank had the right to be consulted, and the Merchants National Bank had no right to give up this money without their consent.    Whenever it is called upon to show the disposition made of this money, its answer will be satisfactory and sufficient, but the plaintiff has never placed himself in a position to require it.    The plaintiff's remedy, by suit against the Stock Yards Bank direct, was plainly pointed out to him by the decision of the Supreme

Court in the Drovers Bank case, and the records of this court, in that "other case," vaguely referred to by counsel in their brief, show that he promptly availed himself of it. The fact that this appeal is prosecuted by counsel for the Stock Yards Bank, indicates very clearly that it is the real party of record, masquerading under the plaintiff's name.

MORAN, J.  On December 18, 1884, the firm of Ed Brown & Tipton deposited in the Union Stock Yards National Bank $1,182.30, with a deposit ticket as follows: "Deposited with Merchants National Bank of Chicago, Illinois, to the credit of Exchange Bank, Earlville, Illinois, by Ed Brown & Tipton for the use of George W. Dumond, $1,182.30.

"Date December 18, 1884."

On the same day the Union Stock Yards National Bank delivered to the Merchants National a check for a large sum, which was paid through the clearing house on December 20th. This check was accompanied by the deposit ticket, which showed that $1,182.30 of the sum included in the check was for account of the Exchange National Bank, Earlville, Ill., but it was not stated that it was for the use of appellant. On December 20th, appellant presented to the Merchants National Bank the following letter from the Exchange Bank of Earlville:

"EXCHANGE BANK,      }
WILLIAM WILSON & Co., }
                        EARLVILLE, ILL., Dec. 30, 188–.
JOHN C. NELLY, Esq., Cashier.

*Dear Sir*:—Deposit of eleven hundred and eighty-two and 30-100 dollars by Stock Yards National for use of G. W. Dumond, we can not receive, as we had closed our doors before it reached you. You will therefore deliver to him the amount, his signature is here (G. W. Dumond), or to his order.
                    Respectfully yours,
                        WILLIAM WILSON & Co."

The Merchants National Bank refused to pay the amount to Dumond, and this action is brought to recover it, as money had and received by the bank which belongs to Dumond, and which the bank ought not to retain.

The same circumstances that have occurred in this case with reference to appellant's money, existed in Drovers National Bank v. O'Hare, 119 Ill. 646, as regarded the money of O'Hare. The Northwestern National Bank held the same position in relation to O'Hare in that transaction that appellee does to appellant in this one.   In answer to the contention of counsel in that case, that the action should have been brought against the Northwestern National Bank, the Supreme Court gave the following expression :

"We are of opinion the suit was properly brought.   The Northwestern National Bank had no notice whatever that the check of appellant represented money belonging to appellee, or that appellee was in any wise interested therein.   It never consented to become his debtor, or to become the depositor of funds for his use, and received the money without notice that it was charged with such use.   The check purported to transfer to the Northwestern National Bank, funds of the Henry Bank, going to general account to the credit of the Henry Bank by the Northwestern National Bank.   There was no privity of contract between the Northwestern National Bank and appellee.   The transfer was made to that bank without his authority or consent, nor did the Northwestern National Bank consent to act as trustee in respect of this money, for its transmission to the Henry Bank, for his use. No action would lie by appellee to recover of the Northwestern National Bank."

Counsel for appellant in this case contended that the question before the Supreme Court in the case in which the language quoted was used, was the liability of the Drovers National Bank, and not that of the Northwestern; and that what was said in the opinion on the latter question was merely *dictum*, and ought not to control this court on the question as now directly presented, and counsel have cited a number of cases which appear to give substantial and authoritative support to their contention that appellee is liable to appellant in an action for money had and received under the facts of this case.   It may be that Drovers Bank v. O'Hare could have been decided without reference to the liability of the

Northwestern National Bank, but the question was made in the briefs of counsel, and received attention and consideration from the court, and whatever might be our view on the authorities, if the question was clearly open to us, we do not feel at liberty to disregard the clear expression of the Supreme Court, given advisedly on a question made in argument, though not necessary to the decision, as we might do in a case where the expression was inadvertent and uncalled for. We prefer to govern the action of this court by the opinion of the Supreme Court as expressed, and leave counsel to urge in that court the arguments which support their client's right to recover notwithstanding Drovers National Bank v. O'Hare. The judgment of the Supreme Court will be affirmed.

*Judgment affirmed.*

GARY, J., takes no part in deciding this case.