## THE DROVERS' NATIONAL BANK

*v.*

## M. J. O'HARE.

*Filed at Ottawa January 25, 1887.*

1. BANKS AND BANKING—*deposit of money for transmission to another bank for the use of a third person—of the trust character of the deposit— rights, duties and liabilities in respect thereto.* A person holding funds of another, deposited the same in a bank for transmission to another bank, for the use of the principal, the deposit being accompanied by a ticket showing for whose use the deposit was made, and, on accepting the deposit, the bank receiving it gave a certificate that the amount had been carried to the credit of the other bank for the use of the principal. It was *held*, that these facts charged the bank receiving the deposit, with full notice of the ownership of the money, and of the trust character in which it was to be transmitted.

2. In such case, the liability assumed by the bank receiving the deposit was to pay to the bank to which the funds were to be transmitted, for the use of the owner, the amount of the deposit, and upon such payment being made, and acceptance thereof, the liability of the bank making the transfer would cease, and the bank receiving the money would become liable to the person for whose benefit the deposit was made.

3. But in such case the bank through which it is sought to make payment to the principal, may decline to receive the money and accept the trust, and

should do so, if it has suspended payment before receiving notice of the deposit. It will not become liable to the *cestui que use* except on coming into possession of the funds, or acceptance of the credit.

4. The bank to the credit of which the deposit was made, being but an intermediary, and being no party to the contract to transmit, and not having accepted the trust before its failure, will not be the proper party to sue for and recover the deposit of the bank receiving it, for a neglect of duty on its part resulting in a loss.

5. Where a person, by his agent, deposits money with one bank, to be transmitted for his use and benefit to another bank, which refuses or is unable to receive it, and can not be compelled to receive it, the purpose of the deposit failing, the bank so receiving the same will hold it to the use of the depositor, and must account to him for it.

6. Money so deposited, and expressed in the certificate of deposit to be forwarded in the usual course of business, is not to be regarded as assets of the bank to which it is to be transmitted, and can not be applied by the bank receiving the deposit, in payment of debts due from the correspondent bank, nor is it subject to garnishment at the suit of creditors of that bank.

7. Where money is thus deposited in one bank to the credit of another bank for the use of the depositor, the latter bank being a mere *medium* for the transfer of the funds, and liable to account to the depositor if it should receive the same, it will be the duty of the bank taking the deposit to give notice to any other intermediate bank it may select, of the trust character of the funds, and not permit it to be carried to the general account of the trustee bank to be applied upon its debts, and will be liable to the *cestui que trust* for a breach of that duty.

8. ACTION—*money had and received—privity of contract.* Where a party deposited money in a city bank to the credit of his country bank, for his use, this course being adopted as a means for the the transmission of the funds to the depositor's place of business, and the city bank transferred the funds to another city bank, which was the correspondent of the country bank, without any notice that the country bank was a mere trustee for another, and the funds were placed to the credit of the country bank, and on its failure they were applied on its indebtedness to its correspondent bank, it was *held*, that, there being no privity of contract between the depositor and the second city bank, he could not maintain an action against that bank, but had his action against the bank which originally received the deposit.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

This was an action for money had and received, brought by M. J. O'Hare, appellee, against the appellant, in the circuit court of Cook county, where a trial by the court, without a jury, resulted in a judgment for plaintiff for $1129.50. The defendant appealed to the Appellate Court for the First District, where the judgment of the circuit court was affirmed, and now prosecutes this further appeal from that judgment.

The plaintiff, living at Mineral Point, Wisconsin, shipped to Chicago a car-load of cattle, consigned to Bensley Bros., commission men, at the Union Stock Yards, with directions to sell, and remit the proceeds to plaintiff, by sending the same to the Henry Bank, at Mineral Point. The commission men received and sold the cattle, April 11, A. D. 1884, the sale amounting, after deducting commissions and expenses, to the sum of $1053.16. Bensley Bros. were customers of the appellant bank, and on said 11th day of April, 1884, made a deposit of the proceeds of said sale in the appellant bank, accompanying the same with a ticket, showing upon its face that such deposit was to the credit of the Henry Bank, for the use of M. J. O'Hare, (plaintiff,) and the appellant bank issued to Bensley Bros. a certificate of deposit to W. T. Henry, acknowledging a deposit to the credit of the Henry Bank, for the use of M. J. O'Hare, of that sum of money. On the 11th day of April, 1884, the Henry Bank failed. The plaintiff first learned of it on the 12th, and supposing the money would be sent by express, endeavored to prevent its falling into the hands of the Henry Bank, but failed to find it, and on the 13th telegraphed the failure to Bensley Bros., and directed them to send the money to him, by express, to Mineral Point. Bensley Bros. applied to the appellant bank on the 14th of April, but it appears that on April 12, 1884, the appellant, by check, transferred the same sum to the Northwestern National Bank, to the credit of the Henry Bank, but omitted to mention that the funds were for the use of O'Hare, but permitted it to be received by the Northwestern National Bank

as funds of the Henry Bank, and it was carried to the account of the Henry Bank, and applied upon indebtedness due from the latter bank to the Northwestern National Bank, and that bank refused to account therefor to appellee. The transfer by appellant was in no way authorized by appellee, but the appellant bank now insists that by such transfer of the funds they are relieved from liability, the transfer having been made in pursuance of instructions of W. T. Henry, of date January 24, 1883, to transfer all deposits made with the appellant bank to the credit of said W. T. Henry, to the Northwestern National Bank. · W. T. Henry died July 2, 1883.

Messrs. SLEEPER & WHITON, for the appellant:

There being no privity of contract between us and O'Hare, he can not maintain an action at law against us, when we, as shown by the evidence, before any notice of his alleged equities, had paid over the fund to the order of the party who was legally entitled to call on us for it. *Carpen* v. *Hall,* 27 Ill. 386; 29 id. 512; *Trumbull* v. *Campbell,* 3 Gilm. 502; *Miller* v. *Whipple,* 1 Gray, 321; *Reed* v. *Savings Bank,* 127 Mass. 295; *Ross* v. *Milne,* 12 Leigh, 204; *Savings Bank* v. *Ward,* 100 U. S. 195; Wharton on Contracts, secs. 784-787.

If other parties have claims upon deposits to the credit of A, individually, or upon trust, they must, before A checks the money out, give the bank definite and authentic notice, or the bank must have notice from the surrounding circumstances, that to honor the depositor's checks would be abetting a fraud. *Fay* v. *Strawn,* 32 Ill. 295; *In re Fire Ins. Co.* 38 id. 289; *Chandler* v. *Hoyle,* 58 id. 46; *Otis* v. *Gross,* 96 id. 612; *National Bank* v. *Hyde Park,* 101 id. 595; *Miller* v. *Receiver,* 1 Paige, 444; *Bank* v. *Mason,* 95 Pa. St. 113; *Ætna Bank* v. *National Bank,* 46 N. Y. 88; *National Bank* v. *Insurance Co.* 14 Otto, 54; *Phelan* v. *Savings Bank,* 4 Dill. 88; *Laubeck* v. *Leibert,* 87 Pa. St. 55; Morse on Banking, (2d ed.) 37, 293, 300; *Ridgely Bank* v. *Patton,* 109 Ill. 479.

Mr. P. L. O'MEARA, for the appellee:

If money is to be transmitted to a distant place, a trustee may do so through the medium of a responsible bank. But he must give notice to all persons whom he employs, that he transmits the money as trustee. If he neglects this precaution, he will be responsible for any loss. *Wren* v. *Kerton*, 11 Ves. 380; *Routh* v. *Howell*, 3 id. 566; *Mossey* v. *Banner*, 1 J. & W. 247; *Knight* v. *Plymouth*, 1 Dick. 120; 1 Perry on Trusts, 406.

A trustee may deposit money temporarily in some responsible bank, but he will be liable for the money in case of failure of the bank, or for its depreciation, if he deposits it to his individual credit. Perry on Trusts, (2d ed.) 443; *Attorney General* v. *Randall*, 21 Vin. Abr. 554; 29 Beav. 211; *Matthews* v. *Brice*, 6 id. 239; *Mason* v. *Whitehouse*, 2 Coldw. 242.

If the *cestui que trust* is unable to trace the trust money into the hands of other persons, or elects not to do so, he may proceed personally against the trustee. *Oliver* v. *Piatt*, 3 How. 333; *Flagg* v. *Mann*, 3 Sum. 486; *Hawkins* v. *Hawkins*, 1 D. R. & S. M. 75; *Freeman* v. *Cook*, 6 Ired. 379; *Norman* v. *Cunningham*, 5 Gratt. 72; *Roberts* v. *Mansfield*, 38 Ga. 452; *Tathrop* v. *Bampton*, 31 Cal. 17; *Calhoun* v. *Burnett*, 40 Miss. 59; Perry on Trusts, (2d ed.) 839, 843.

He may proceed against the trustee as against an ordinary debtor. *Tathrop* v. *Bampton*, 31 Cal. 17; 1 Perry on Trusts, 444.

An action at law will lie. *Chase* v. *Roberts*, Holt's N. P. C. 501; *Ed.* v. *Botts*, 7 M. & Y. 590; *Dias* v. *Brunels*, 24 Wend. 9; *McCrea* v. *Purmont*, 1 Story's Eq. 444; 16 Wend. 460; *Insurance Co.* v. *Router*, 24 id. 505; 4 Yerg. 57; *Hull* v. *Harris*, 12 Ired. 29; 2 Perry on Trusts, 843.

The certificate issued by the Drovers' Bank, and held by O'Hare, is a written declaration that defendant received said money as trust money; and O'Hare would be entitled to the money against the assignee or receiver of the Drovers' National

Bank, had the same become bankrupt while the money was under its control. *Clark* v. *Hallan*, 19 Beav. 262; *Puckett* v. *Wright*, 2 Hare, 120; Hill on Trustees, 65.

The Drovers' Bank having notice of the nature of the deposit, was bound to keep it separate, as a trust fund. Morse on Banks, 40; 13 Eng. L. & Eq. 222.

The law undoubtedly is, that the *cestui que trust* may, if he choose, follow the trust fund as far as he can identify it; and the following authorities go far towards showing that this money, deposited April 12, 1884, by the Drovers' Bank with the Northwestern Bank, had not, as a matter of law, sufficient ear marks to enable O'Hare to follow it in their hands: 25 Ill. 73; 96 id. 612; 2 Wall. 252; 28 Ill. 463. But the Drovers' Bank could not cast upon us the additional burden of identifying the trust fund, and so we can, if we choose, proceed against it personally. 2 Perry on Trusts, (2d ed.) sec. 843; 1 id. 444; Wharton on Negligence, sec. 435; *Matthews* v. *Brice*, 6 Beav. 239.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

It is contended that if a right of recovery exists in the plaintiff, the action should have been brought against the Northwestern National Bank, and not against the appellant. We are of opinion that the suit was properly brought. The Northwestern National Bank had no notice whatever that the check of appellant represented money belonging to appellee, or that appellee was in anywise interested therein. It never consented to become his debtor, or to become the depository of funds for his use, and received the money without notice that it was charged with such use. The check purported to transfer to the Northwestern National Bank, funds of the Henry Bank, going to its general account, and the same was so received by that bank and carried to the credit of the Henry Bank by the Northwestern National Bank. There was no privity of contract between the Northwestern National

Bank and appellee. The transfer was made to that bank without his authority or consent. Nor did the Northwestern National Bank consent to act as trustee in respect of this money, for its transmission to the Henry Bank, for his use. No action would lie by appellee to recover of the Northwestern National Bank. *Carpen* v. *Hall,* 29 Ill. 512; *Trumbull* v. *Campbell,* 3 Gilm. 502; *Savings Bank* v. *Waid,* 11 U. S. 195; /00 Wharton on Contracts, 784, 787.

Bensley Bros. had been directed by appellee to forward the proceeds of the sale of his cattle to the Henry Bank, at Mineral Point, Wisconsin. For this, purpose they were his agents, and whatever they did in pursuance of that direction was the act of appellee. In the course of transmitting appellee's money, the agents of appellee deposited it in the appellant bank to the credit of the Henry Bank, for the use of O'Hare, appellee. The deposit was accompanied by a ticket or memoranda, distinctly notifying appellant that the deposit was for the use of appellee. Appellant, with such notice, accepted the deposit, and issued and delivered to appellee's agents a certificate therefor, in which they certify that the amount has been carried to the credit of the Henry Bank, for the use of appellee. Appellant must be held to have received this money with full knowledge that it belonged to appellee, and of the trust character in which it was to be transmitted to the Henry Bank. The liability assumed by the appellant bank was, to pay to the Henry Bank, for the use of appellee, the amount of this deposit with it, and upon such payment being made, and acceptance thereof by the Henry Bank, the liability of appellant would cease, and the Henry Bank become liable to account to appellee for the same.

It is, however, urged, that as the deposit was to the credit of the Henry Bank, it alone had the right to demand and receive the money, and alone could recover the same. This position is, we think, untenable. The deposit was by appellee, for transmission of his own funds to the credit of his home

bank, for his use. The Henry Bank was not a party to the deposit, never gave its consent to receive the credit, or accepted the trust created for appellee's benefit. On the very day the deposit was made, the Henry Bank, without any notice of this deposit to its credit, closed its doors as a bank, and its affairs passed into the hands of an assignee, for the benefit of its creditors. It will not be questioned, that if, before closing its doors, the Henry Bank had had notice of this deposit to its credit, it would have had the right to decline it, and refuse to assume the trust with which it would be charged upon receiving the money. Common honesty would have dictated such a course, in view of its financial condition. The Henry Bank was a mere intermediary, chosen by appellee, through which the money should pass in reaching appellee, and it would become liable to appellee only in the event of its coming into possession of the funds, or acceptance of the credit.

The fact that the deposit was made to its credit without its knowledge or consent, created no contract relation between the Henry Bank and appellee, unless the Henry Bank can be held in some way to have assented thereto. (Wharton on Contracts, 787, and authorities cited.) The authorities cited seem fully to support the reasoning of the text. That the Henry Bank did no act indicating its assent to receiving the credit, is apparent. As stated, at no time since the deposit was made has it been in condition to consent or to act as trustee of this fund. Waiving, then, the question whether the transfer to the Northwestern National Bank, by check, of a like amount of money, constitutes a defence, if the Henry Bank refused to accept the credit, or for any reason it became impossible that it could receive the money in trust, for the use of appellee, it became the duty of appellant to hold the money for the use of the depositor. He, by his agent, deposited the money with appellant, to be transmitted, for his use and benefit, to another bank, which refuses or is unable to receive it, and can

not be compelled to do so. The purpose for which the deposit was made has failed, and is incapable of execution, and appellant would hold the funds to the use of appellee, and must account to him for the same. *City of St. Louis* v. *Johnson,* 5 Dill. 241; *Fayley* v. *Turner,* 26 L. J. and C. 710; Wharton on Contracts, *supra.* Nor does it militate against this view, that appellee may have been indebted, in some amount, to the Henry Bank. The evidence wholly fails to show that there was any understanding or agreement that the bank was to be paid out of this fund, or had any interest therein.

It is shown, however, that it is the custom of the city banks, when a deposit is made to the credit of a country bank in a city bank not its correspondent, to transfer the amount, by check, to the city correspondent of the country bank, and it is urged that the transfer to the Northwestern National Bank, by appellant, was in accordance with this custom, and that appellant is protected from liability. While it probably is true that parties dealing with the city banks, with knowledge of the custom mentioned, would be bound thereby, it is not necessary, in this case, to determine the effect to be given to that general usage among the city banks. As we have seen, when this money was deposited with the appellant bank, it was impressed with the trust in favor of appellee, and while the Henry Bank would be entitled to draw it from the appellant bank if it accepted the deposit to its credit, for the use designated, yet it was, as already said, a mere intermediary in the transit of the funds from Chicago to appellee, at Mineral Point, and the Henry Bank would be compelled to account to him therefor. Appellant might hold the money subject to the order of the Henry Bank, which, by its letter of advice and certificate of deposit, would be advised of the use for which it was to receive the money, or appellant might transmit it in the regular course of business, being responsible only for such care and diligence as the law charges upon persons similarly situated. But if the Henry Bank must, from the

character given the funds in the hands of appellant, account to appellee therefor, it was the duty of appellant to give notice to any intermediary it might select, of the trust character impressed upon the funds, and not permit it to be carried to the general account of the trustee, to be applied upon its debts. (1 Perry on Trusts, 406, 443, 444, and authorities cited.) In the hands of appellant this money was not liable as assets of the Henry Bank, nor could it be applied by appellant in payment of debts due from the Henry Bank, nor would it be subject to garnishment, in appellant's hands, at the suit of creditors of that bank. In what is claimed as an attempt to transfer the funds to the Northwestern National Bank, appellant withheld all indications of the trust character of the funds, or that it was other than money going to the general account of the Henry Bank. To this, appellee in nowise consented, and appellant stands in no better position than if it had retained the money in its custody.

It is, however, contended, that, under the authority of the letter of W. T. Henry, appellant was justified in transferring this fund to the Northwestern National Bank in the manner it did, and therefore the loss must fall upon appellee, if loss occurs. Without pausing to discuss whether the death of W. T. Henry would, under the circumstances here shown, amount to a revocation of that authority, it is apparent that the direction was from W. T. Henry, who, up to his death, July 1, 1883, carried on the banking business in his own name, as W. T. Henry. After his death, the business was carried on by another, who adopted the style of "Henry Bank," and it was to this latter institution that the credit was given in this instance. But, independently of this, that letter, if otherwise binding, would not authorize the deposit, in the Northwestern National Bank, of appellee's money, to the credit of the Henry Bank, as funds of the Henry Bank generally, and destroy all "ear marks" by which the funds could be identified as held for appellee's use. While appellant held the funds

the trust character continued. When the Henry Bank received them, if at all, it was for the benefit of appellee, and it can not be held that any previous direction of the Henry Bank, relating to a disposition of its funds, would authorize the destruction of the evidences of the trust relation created in respect to this fund.

There is no hardship in the rule requiring the bank to preserve the character of the funds received by it, in transmitting the same. All appellant had to do to protect itself, was to preserve the trust character impressed upon the fund in transferring it to the Northwestern National Bank. If that bank had, with notice of the trust, received this money, it would have held it in the same character it was held by appellant, and charged with the same use, and upon failure of the Henry Bank before the transmission of the funds to it, would be bound to account to appellee therefor.

Perceiving, therefore, no error in this record, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*