MARSHALL CUTLER et al., Respondents, *v.* THE AMERICAN
EXCHANGE NATIONAL BANK, Appellant.

Plaintiffs paid into defendant's bank $500 upon its promise to remit that
sum for them to H. at Leadville, Col., receiving a "letter of advice"
signed by defendant's cashier, directed to a Leadville bank, which stated
that the account of that bank was credited that day with $500 "received
from" plaintiffs "for the use of" H.   Plaintiffs forwarded this letter to
H., but before its receipt the Leadville bank had failed and a receiver had
been appointed, who refused to pay the money.  Plaintiffs, on return of
the letter, demanded of defendant that it carry out its agreement or
refund the money, and upon its refusal, brought this action to recover
the same.   *Held*, that defendant received the money as a special deposit
and was bound to retain it until drawn out under authority of the letter;
that by its contract it agreed, in substance, that the Leadville bank would
pay the amount on presentation of the letter, and when payment was
refused and the letter returned, it became at once liable to repay the
money to plaintiffs; that the words in the letter that the Leadville bank's
"account is credited" with the money were controlled in their general
application by the remainder of the clause, *i. e.*, that it was "for the use
of" H.; that no contractual relations existed between plaintiffs and the
Leadville bank, and no obligation was imposed upon it until it adopted
the defendant's act or in some manner assumed the obligation; that the
fact that defendant was its correspondent and maintained an account
with it did not affect the question.

Reported below, 21 J. & S. 163.

(Argued April 23, 1889; decided June 4, 1889.)

APPEAL from judgment of the General Term of the Superior
Court of the city of New York, entered upon an order made
the first Monday of June, 1886, which affirmed a judgment
in favor of plaintiffs, entered upon a verdict directed by the
court.

This action was brought to recover the sum of $500 alleged
to have been deposited with defendant by plaintiffs.

The plaintiffs were depositors with the defendant bank.
Desiring to remit a sum of money to one Hall, in Leadville,
Col., they asked of the defendant's officers if they could do it
for them.   They said they could, but refused to give the

plaintiffs a draft on a bank in Leadville, saying they could not do that, but they would give plaintiffs a letter of advice which, as they stated, was their way of doing business. To this plan plaintiffs assented and paid into the defendant the sum of $500. They then received back from the defendant the following writing :

> " NEW YORK, *July* 20, 1883.
> " BANK OF LEADVILLE, LEADVILLE, COLORADO.

" Your account is credited this day $500, received from Cutler, Hall & Co., for the use of J. Seymour Hall.

> "E. BURNS, *Cashier.*"

Plaintiffs forwarded this letter to Hall, but before he received it the Leadville bank had failed and had gone into a receiver's hands, who refused to pay any money. Plaintiffs thereupon received back the letter and then demanded that the defendant carry out their undertaking to transmit the money to Hall or to pay back the money. Upon its refusal this action was brought.

The facts are sufficiently stated in the opinion.

*L. B. Bunnell* for appellant. This was not a special deposit for a particular purpose, the identical fund to be returned, but a deposit, generally, for credit in the account of the Bank of Leadville to be paid by the Bank of Leadville to a particular party. (*Boyden* v. *Bk. of Cape Fear*, 65 N. C. 16; *Marsh* v. *O. C. Bk.*, 34 Barb. 298; *Commercial Bk.* v. *Hughes*, 17 Wend. 94.) A letter containing information of any circumstance unknown to the person to whom it is written, generally informing him of some action by the writer, is a letter of advice. (Chitty on Bills, 165.) This letter was no part of the contract between the parties. It was evidence, however, of what the parties had done, and to the Bank of Leadville it amounted to a mere notice of that fact. The transaction would have been the same if it had not been given. (*Guillaume* v. *G. T. Co.*, 100 N. Y. 498; *Williams* v. *Deacon*,

4 Exch. Ch. 401.)   The right of action for this money is against the Bank of Leadville. (*People* v. *State Bk.*, 36 Hun, 609.)   The defendant became the agent of the Bank of Leadville in respect of these deposits.   (*Butler* v. *Harrison*, Cowp. 565.)

*Dudley R. Horton* for respondents.   Defendant had no right to reduce the indebtedness of the Leadville bank to it by the application of this special deposit.   (*Dows* v. *Kidder*, 84 N. Y. 121 ; *Falkland* v. *S. N. Nat. Bk.*, Id. 145 ; *D. N. Bk.* v. *O'Hare*, 119 Ill. 646 ; *Corpen* v. *Hall*, 29 id. 512 ; *Nimbus* v. *Campbell*, 3 Gil. 502 ; *Savgs. Bk.* v. *Wade*, 11 U. S. 195 ; Wharton on Cont. 784, 787 ; *City of St. Louis* v. *Johnson*, 5 Dill, 241 ; *Farley* v. *Turner*, 26 L. J. & T. 10.) The issuing of a letter of advice is a certification of the foreign bank's account.   (*Cooke* v. *State Nat. Bk.*, 52 N. Y. 96 ; *Freund* v. *I. and T. Nat. Bk.*, 76 id. 352.)   The transaction was in the nature of a special deposit.   (*Drovers' Nat. Bk.* v. *O'Hare*, 119 Ill. 646 ; *M. Nat. Bk.* v. *Loyd*, 90 N. Y. 533 ; *Van Leuven* v. *F. Nat. Bk.*, 54 id. 671.)   The defendant was the agent or trustee of the plaintiff, not of the Bank of Leadville.   (*People* v. *City Bk. of Rochester*, 96 N. Y. 32.)   Plaintiffs are not estopped by the wording of the letter of advice.   (*D. Nat. Bk.* v. *O'Hara*, 119 Ill. 646 ; *Van Alen* v. *A. N. Bk.*, 52 N. Y. 1 ; 2 Gratt. 544 ; *Pennell* v. *Deffell*, 4 De Gex, M. & G. 372 ; 6 Jones Eq. 34 ; 2 H. & M. 417 ; 2 Kent's Com. 796, 801.)   The defendant bank is liable for the default of its correspondent. (*Allen* v. *Merchants' Bk.*, 22 Wend. 215 ; *Ayrault* v. *Pacific Bk.*, 47 N. Y. 570 ; *Reeves* v. *State Bk.*, 8 Ohio, 460 ; *Titus* v. *Merchants' Nat. Bk.*, 35 N. J. L. 588 ; *Abbott* v. *Smith*, 4 Ind. 452 ; *Tyson* v. *State Bk.*, 6 Blackf. 225 ; *Mackersy* v. *Ramsays*, 9 Cl. & F. 818.)   As the Bank of Leadville could not have been compelled to pay upon the letter of advice, defendant must.   (*Dickerson* v. *Wason*, 47 N. Y. 439.) Unless the fund came into the hands of the Bank of Leadville or its receiver, defendant must repay plaintiffs.   (*People* v.

*M. and M. Bk. of Troy*, 78 N. Y. 269; *Dows* v. *Kidder*, 84 id. 121; *Falkland* v. *S. N. Nat. Bk.*, Id. 145.)

GRAY, J. This appeal turns upon the understanding and agreement between these parties. That they made a distinct compact is not to be doubted, and the plaintiff's construction of it seems to us as logical as it is natural. The agreement must control the respective rights and duties, and it is to be determined by what was said and done between the parties, when the plaintiffs paid their money to the defendant. The plaintiffs wished to make a payment to a certain person, in a distant state, and the defendant undertook to effect it for them in its own way. When the plaintiffs assented and paid in the sum desired to be remitted, they received the paper writing in question. From that moment the defendant became a depositary of a fund, which was, by its own agreement, devoted to one particular purpose and to no other. If that purpose failed, or became incapable of being effectuated, or was recalled by the plaintiffs, the absolute right to the moneys was in them and in no one else. The defendant's undertaking was to effect the payment of the sum deposited by plaintiffs to Hall, and at no time did the moneys become merged in the general funds of the defendant, or cease to be under its dominion for the purpose of its assumed agency. Its so-called letter of advice was equivalent to its certificate to its western correspondent of the deposit of a sum of money by the plaintiffs, for the use of the person mentioned therein. The paper was worthless in the hands of any person, until it was accepted by the Leadville bank, to which it was addressed. By its contract the defendant agreed with the plaintiffs, in effect, that the Leadville bank would pay $500 to Hall upon the presentation of its letter of advice. When that payment was refused and the letter of advice was returned to the plaintiffs, the defendant became at once liable to repay the money to the plaintiffs.

The defendant seeks to avoid what seems to be this very plain liability on its part, on the ground that by crediting

the sum to the Leadville bank's account on its books, the defendant became a debtor to that bank for the money, and that the plaintiffs had assented that it should be so credited. But that was not the agreement, and no such construction is possible.  The plaintiffs paid the money to defendant as a conduit for its transmission to Hall, and its undertaking was that Hall should get it.  The letter of advice, which plaintiffs received, by its terms, limited the use of the money to him alone.  The defendant became the special depositary of the fund, and bound itself to retain it, until drawn out under the authority of the letter.  The letter was Hall's warrant for demanding payment of the bank to which it was addressed, and, upon payment, became the bank's voucher for reimbursement by the defendant.  The form of the writing in question is not material, if its meaning is unobstructed and clear.  In stating therein that the foreign bank's " account is credited " with the money, those words were controlled in their general application and sense by the remainder of the clause, that it was " for the use of Hall."  Thus the meaning of the instrument was obvious to the plaintiffs, to Hall and to the foreign bank.  It evidenced a special deposit made by plaintiffs, and warranted and protected the foreign bank in paying the sum mentioned to Hall upon its production and surrender.

The appellant argues that, by the deposit of the money and by passing it to the credit of the account of the Leadville bank, a promise to pay the sum was implied by law on the part of that bank.  That proposition, of necessity, involves the idea that, actually or constructively, the foreign bank became a party to the arrangement in New York; and, also, that the plaintiffs in some way consented to its substitution for the defendant in the performance of the engagement entered into.

As there was an express contract made with plaintiffs by defendant to do the particular thing, the defendant must be bound by its terms and legal effect.  As we have said, the compact was clear enough, and whatever forms the defendant went through, it would not be allowed to change it, or to divert the moneys to any other purpose or use.  And yet

that is what it is striving for in its present contention. If allowed to be applied on account of the foreign bank's indebtedness, as would be the effect if we should hold that the credit on the books of the defendant to its account passed the title to the moneys, to that extent the defendant would be the gainer and the plaintiffs would be the losers, by being remitted to a claim upon the receiver of the insolvent foreign bank. But the claim of the defendant, that the Leadville bank became a party to, or bound by, the transaction in question, is quite untenable, in the absence of any evidence of its assent, or of some act on its part equivalent to the assumption of the obligation. Here was an express agreement entered into between these parties for the accomplishment of a particular purpose, and to which the money paid to the defendant was dedicated from the moment of its receipt. No contractual relations existed between the plaintiffs and the foreign bank. They were strangers to each other. That bank did not know of the transaction, and the contractual elements of mutuality, or of assent, were wholly wanting. No duty was imposed upon it, and it could come under no obligation until it adopted the defendant's act. How, then, can it be argued that some obligation on its part was implied by the law? And can it be seriously contended that the law implied on plaintiffs' part that they looked to and relied upon the promise of the Leadville bank? I think that would be carrying the idea of implied contracts to an unknown and unwarranted extent.

The relations of correspondence between defendant and the Leadville bank enabled such an arrangement to be made; but the fact of the defendant being a correspondent and maintaining an account with the Leadville bank in no wise affects the case. The defendant did not say in its letter that the account of the Leadville bank was credited generally with the moneys. The advice to it was of a deposit to its credit for a particular and designated purpose, namely, for the use of Hall. If the defendant had become insolvent, the next day after the transaction, would the Leadville bank have been the loser, as to the money, or the plaintiffs? It seems pretty plain

that the loss would have been the plaintiffs'; inasmuch as the Leadville bank had not become bound to anything, expressly or impliedly. The argument of the appellant fails to appreciate the legal effect of the transaction between these parties. The deposit was a special one, for a designated beneficiary and could not be used or dedicated by the defendant to any other purpose. No system of bookkeeping entries would be allowed to cause the plain agreement of the parties to miscarry; either with respect to a payment to Hall, or to its return to the depositors, in the event of the failure of the defendant to cause such payment.

The case of *Drovers' Bank* v. *O'Hare* (119 Ill. 646), was not unlike the present one in its features, and the conclusions of the court were that the owner of the fund deposited must receive it back. In that case the Drover's Bank gave to the agents of one O'Hare, depositing a sum of money to the credit of the Henry Bank for the use of said O'Hare, its certificate that the amount had been carried to the credit of the Henry Bank for the use of O'Hare. The Henry Bank failed the same day; but the Drovers' Bank transferred the sum to the N. W. Bank to the credit of the Henry Bank, without mentioning for what use the funds had been deposited with it. The N. W. Bank carried the moneys to the account of the Henry Bank and applied them upon the indebtedness due it from that bank and refused to account to O'Hare for the moneys. The court held that the Drovers' Bank received and held the funds to the use of O'Hare and must account to him for the same.

The opinion of the court below, at General Term, upon a first trial of this action, was well considered, and a more extended expression of our views seems uncalled for.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.