## BACON et al. v. NATIONAL BANK OF COMMERCE OF FORT WORTH.*
### (No. 10451.)

(Court of Civil Appeals of Texas. Fort Worth. Dec. 8, 1923. On Motion for Rehearing, Jan. 19, 1924. Further Rehearing Denied Feb. 23, 1924.)

**1. Banks and banking ⊚⟿72—Stockholders of dissolved bank could bring action against other bank for conversion of asset of dissolved bank.**

The stockholders of a dissolved bank having no creditors could bring an action against another bank for conversion of an asset of dissolved bank, notwithstanding Rev. St. art. 1206, making the president and directors or managers of the affairs of a corporation trustees of the creditors and stockholders, with full power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders.

**2. Banks and banking ⊚⟿188½—Bank authorized by other bank to telegraph money to third bank held agent or trustee of other bank as to amount to be transmitted.**

Where one bank telegraphed instructions to a second bank to telegraph a specified sum of money to be placed to the credit of a third bank, the relation of the second bank to the first bank as to the funds to be transmitted was that of agent or trustee, and the second bank could only relieve itself of the liability for an appropriation of the fund by following, as agent, the instructions of its principal, the first bank, or, as trustee, in acting in good faith with first bank as its cestui que trust.

**3. Assignments ⊚⟿49—Banks and banking ⊚⟿ 188½—Bank not transmitting funds liable for conversion; telegram from one bank to another directing second bank to transmit funds for benefit of third bank held not to operate as an assignment of funds to third bank.**

Where one bank deposited its cashier's check which afterwards was discovered to be worthless, with second bank, with instructions to have the amount deposited to the credit of the first bank, in a third bank, and the second bank wired instructions to a fourth bank to wire third bank to place such amount to the credit of first bank, but fourth bank did not comply with instructions contained in such telegram, but applied the amount toward payment of first bank's debt to fourth bank, the fourth bank was liable to second bank for conversion, since second bank's telegram to fourth bank, even assuming that it had the form and effect of a check on fourth bank, did not operate as an assignment of the amount to first bank, in view of Negotiable Instruments Law, § 189.

⊚⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction April 9, 1924.

On Motion for Rehearing.

**4. Banks and banking ☞188½ — Bank on check proving worthless had the right to reverse credit entries.**

Where one bank deposited its cashier's check with a second bank with instructions to have amount thereof deposited to the credit of the first bank in a third bank, and the second bank wired instructions to a fourth bank to telegraph to a third bank directing third bank to place amount thereof to credit of first bank, but fourth bank did not comply with such instructions, but applied the amount toward payment of first bank's debt to it, and the check was never paid, the second bank had the right to reverse its credit entries and repossess itself of the fund before its actual receipt by the first bank.

**5. Limitation of actions ☞104(1)—Plaintiffs held not precluded by limitations from recovering against bank for conversion.**

Where one bank deposited a certified check with a second bank with directions that amount thereof be credited to first bank in third bank, and second bank sent telegram to fourth bank instructing fourth bank to wire third bank to credit first bank with such amount, but fourth bank did not comply therewith, and appropriated the amount toward payment of first bank's indebtedness to fourth bank, neither the stockholders of the second bank nor the commissioner of insurance and banking in charge of fifth bank to which assets of second bank had been transferred were precluded by limitations from recovering from fourth bank for conversion, where there was no bank entry or claim of second bank to the amount in controversy among the assets transferred to the fifth bank, and fourth bank concealed the fact that amount had not been credited first bank by third bank, so that actual knowledge of the conversion was obtained within the period of limitations.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by T. R. Bacon and others against the National Bank of Commerce of Fort Worth, in which the Commissioner of Insurance and Banking intervened. Judgment for defendant, and plaintiffs and intervener appeal. Reversed and rendered, for plaintiffs.

Kelley, Sheerin & Settle, of Rising Star, Smith, Blow & Culver and Walker, Stuart & Rattikin, all of Fort Worth, Weldon, McDonald & Cummings, of Wichita Falls, and Goree, Odell & Allen, and Ernest May, all of Fort Worth, for appellants.

Thompson, Barwise, Wharton & Hiner, of Fort Worth, for appellee.

CONNER, C. J. This suit was originally instituted by T. R. Bacon, Tom Harrell, J. B. Pool, J. M. Proctor, W. C. Mason, A. A. Tate, and W. M. Weeser, against the National Bank of Commerce of Fort Worth, Tex., to recover the sum of $15,000, alleged to have been wrongfully converted by the Fort Worth Bank. Later, to wit, on April 27, 1922, the Commissioner of Insurance and Banking for the state of Texas intervened in the suit, adopting in the main the allegations of the plaintiffs, and claimed the fund. The facts upon which the litigation appears to be founded, briefly and substantially stated, are as follows: On September 2, 1919, the State Bank of Sipe Springs was a banking corporation duly organized under and by virtue of the laws of the state of Texas, with its principal office in Sipe Springs, Tex.; on or about that date one A. E. Smith was engaged in the bank business at Desdemona, Tex., under the trade name of Bank of Commerce of Desdemona. Said Smith also appears to have had some connection with the State Bank of Sipe Springs. On or about that date Smith, acting for himself and for the Bank of Commerce of Desdemona, appears to have presented to the State Bank of Sipe Springs a cashier's check for the sum of $15,000, with instruction for the state bank to have that sum deposited to the credit of the Desdemona bank in the National Bank of Commerce of Kansas City, Mo. The state bank of Sipe Springs at that time had on deposit to its credit in the National Bank of Commerce of Fort Worth some $70,000, and pursuant to the instruction referred to sent to the Fort Worth Bank the following telegram:

"Sipe Springs, Texas, 9–2–19. National Bank of Commerce, Fort Worth, Texas. Wire to National Bank of Commerce, Kansas City, Missouri, Fifteen Thousand Dollars to be placed to the credit of Bank of Commerce, Desdemona, Texas. [Signed] State Bank of Sipe Springs, Texas."

The Fort Worth bank, on receipt of the telegram, prepared a telegram addressed to the National Bank of Commerce of Kansas City, at that time one of the correspondent banks of the Fort Worth bank, directing that the sum of $15,000 be deposited to the credit of the Bank of Commerce of Desdemona, as it has been instructed to do, at the same time entering upon its books a credit of $15,000 in favor of the Kansas City Bank, and charging the State Bank of Sipe Springs' account with a like amount. The telegram so prepared by the Fort Worth bank to the Kansas City bank was never delivered, though one of the witnesses testified to its preparation and delivery to the telegraph office for that purpose, and in fact the Kansas City bank never made a deposit to the credit of the Desdemona bank of any sum, nor gave credit therefor to the Fort Worth bank.

It further appears that on September 18, 1919, the State Bank Examiner took charge of the State Bank of Sipe Springs, but later permitted that bank to reopen for business on November 3, 1919, upon the stockholders depositing the amount of some $75,000 to cover worthless assets, including the certified

check of Smith for $15,000, the Desdemona bank having failed and closed its doors on the 17th day of September, 1919. The State Bank of Sipe Springs continued its business until the 20th day of January, 1920, when the corporation was voluntarily dissolved and certain of its assets sold to the Guaranty State Bank of Sipe Springs, which, in turn, finally closed its doors in May, 1921, and was taken in charge by the Commissioner of Insurance and Banking of the State, the intervener in this case.

On or about the 27th day of September, 1919, the Fort Worth Bank, upon receipt of a statement of its account with the National Bank of Commerce of Kansas City, learned of the fact that its telegram to that bank had never been received and acted upon, and thereupon the Fort Worth bank reversed its book entry, charging back to the Kansas City bank the sum of $15,000, but failed to change the charge against the account of the Sipe Springs State Bank. On the contrary, it applied the sum of $6,238.88 to an indebtedness of the Desdemona bank, resulting from overdrafts of that bank, and delivered to the receiver of the Desdemona bank the remainder, to wit, the sum of $8,761.12. The original plaintiffs are the sole stockholders of the dissolved State Bank of Sipe Springs, and at the time of the dissolution of that corporation it had no debts other than to its depositors, and it transferred certain of its real property to designated persons, and delivered to the Guaranty Bank of Sipe Springs its books, notes, and other assets as shown by the book entries, the Guaranty Bank assuming to pay the depositors of the State Bank, none of whom appear to have been unpaid.

The item in controversy, to wit, the $15,-000, did not at that time appear on the books of the State Bank as an asset, no account of this item at the time being taken, neither the officers of the State Bank nor of the Guaranty Bank of Sipe Springs at that time having knowledge of the fact that the object of the direction to deposit $15,000 in the Kansas City bank to the credit of the Desdemona bank had not been accomplished.

A jury was impaneled to try the case, but, upon the evidence as above briefly outlined, the court, at the request of the appellee, peremptorily instructed the jury to find a verdict in its favor, and, upon the return of verdict as so directed, the court entered judgment in appellee's favor in accordance therewith, and the plaintiff stockholders and the Commissioner of Insurance and Banking have appealed.

[1] It is evident that if either the plaintiffs or the commissioner of insurance and banking are entitled to recover under the facts stated the judgment should be reversed, but appellee, in support of the instructed verdict and judgment, insists that the commissioner of insurance and banking is barred of any right, if any he ever had, by the statute of limitation, and that the original plaintiffs were not entitled to maintain this suit against appellee, under article 1206, Rev. Statutes. The article referred to provides, so far as necessary to state, that, upon the dissolution of any corporation, unless a receiver is appointed by a court of competent jurisdiction, the president and directors or managers of the affairs of the corporation at the time of its dissolution, by whatever name they may be known in law, shall be trustees of the creditors and stockholders of such corporation, with full power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders, after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them, after paying all just and reasonable expenses, conveying powers necessary to accomplish the designated objects. In the case before us, however, there appear to be no outstanding debts of the State Bank of Sipe Springs nor any stockholders other than plaintiffs among whom the undistributed assets of the dissolved corporation can be divided, and the statute does not prohibit the stockholders under such circumstances from maintaining actions necessary to preserve their rights. In 5 Cyc. p. 573, in speaking of the assets of a dissolved bank, it is said that:

"The surplus after paying all debts belongs, under every form of dissolution, to the shareholders, and should be ratably divided among them"—citing Lum v. Robertson, 6 Wall. (U. S.) 277, 18 L. Ed. 743; Bacon v. Robertson, 18 How. (U. S.) 480, 15 L. Ed. 499.

In 8 Fletcher, Cyclopedia Corporations, p. 9186, § 5586, it is said, citing authorities, that:

"Dissolution terminates the personal, but not the property, rights of stockholders."

In the same volume, page 9217, § 5624, it is said:

"Independently of statute, after a corporation is dissolved, a stockholder may file a bill to obtain a distribution of the corporate assets. But, after dissolution, stockholders cannot ordinarily sue on behalf of the corporation to reach corporate assets. However, if there are no creditors, stockholders are sometimes held entitled to sue to enforce corporate claims, especially where the corporation is practically, but not legally, dissolved."

In volume 6, of the same work from which we have just quoted, page 6889, § 4058, under the title of "Who Are Regarded as Stockholders Entitled to Sue," it is said:

"In order that a person may maintain a suit as a stockholder to set aside or enjoin an ultra vires transaction, or to redress or prevent other injuries to the corporation, he must be a stockholder in fact when the suit is brought,"

thus indicating what we think is to be implied from a further reading of the section, that if the plaintiff in fact is a stockholder he may, generally speaking, be permitted to seek redress in the courts. We also find that in volume 1, Michie on Banks and Banking, p. 494, § 72, it is said:

"In most, if not all, of the states in which the Legislature has deemed it expedient to repeal or modify the principles of the common law which apply on the dissolution of a banking corporation produced by a judgment of forfeiture, express provision has been made by which the stockholders may take the surplus after the payment of debts. The dissolution of a banking corporation not only does not suspend the property rights of the stockholders, or hinder the preservation thereof by a court of chancery, but furnishes additional ground therefor,"

an exception to the rule so stated being noted in Mississippi.

In Baldwin v. Johnson, 95 Tex. 85, 65 S. W. 171, it was held by our Supreme Court that:

"Stockholders in a dissolved corporation owing no debts are tenants in common of its property, and, as such, may sue for and recover its lands in Texas, as against trespassers, on behalf of themselves and their cotenants."

We see no reason why, under the circumstances of this case, the stockholders in the State Bank of Sipe Springs may not assert their rights in court; they, and they alone, are the undoubted owners in equity, and have the right to the possession of the funds in controversy for which the appellee bank is liable, unless that fund has been transferred to the Guaranty State Bank of Sipe Springs. We think, therefore, that the article of the statute relied upon must be construed as applicable more particularly to cases where the corporation is dissolved, having outstanding claims and debts and other unsettled affairs, and that, as applied to this case, with circumstances such as we have before us, it is merely cumulative, and not restrictive. In this connection, we wish to also note that the contention under discussion was not presented by appellee in its plea as a want of proper parties, or in the way of a plea in abatement on the ground that plaintiffs had no right to sue in the capacity in which they did, or by a plea in abatement pointing out that there was a living and available president, director, or manager of the State Bank of Sipe Springs capable of suing who acted as such at the time of its dissolution. On the contrary, the question was presented in the court below by a pleading to the effect that it appeared from plaintiff's petition that they were not entitled to recover for the reason that the plaintiffs were the owners of the fund, and that the State Bank of Sipe Springs had transferred all of its assets to the Guaranty State Bank. Whether such transfer, including the fund in controversy, was made or not, is a question, we think, with which appellee has no concern. That issue is one existing between the plaintiffs in the original suit and the commissioner of insurance and banking, and, inasmuch as the intent of the parties to the transaction, as well as the circumstances accompanying the transfers. is an important element in the determination of the issue, we think it must be submitted to the court or jury for findings. As to the issues of limitation, there was evidence, as we construe the record, tending to show that neither the plaintiffs nor the commissioner of insurance and banking had undisputed knowledge within the statutory period of the misappropriation, if such it was, of the $15,000 in controversy by the appellee bank. The issue was therefore one for the jury.

The vital question, therefore, is: Was the appellee bank legally authorized and empowered in law or equity to appropriate to its own use, as it did, a part of the $15,000 that otherwise belonged to the stockholders of the State Bank of Sipe Springs, or to which the commissioner of insurance and banking was entitled, in payment of the indebtedness of the Desdemona Bank to appellee, and to deliver to the receiver of said Desdemona bank the balance of said funds after the insolvency of the Desdemona bank was known to the officers and managers of appellee bank?

[2, 3] As it seems to us, no amplified discussion is necessary in order to arrive at a correct solution of the question. As we view the undisputed facts, the relation of the Fort Worth Bank to the State Bank of Sipe Springs, as to the funds to be transmitted, was that of agent or trustee, and that the Fort Worth bank could only relieve itself of the liability for an appropriation of that fund by following, as agent, the instructions of its principal, or, as trustee, in acting in good faith with its cestui que trust. Appellee insists that the telegram under the circumstances operated as an assignment of the $15,000 to the Desdemona bank, and that hence it had the right to liquidate that bank's indebtedness to appellee and to deliver the remainder to the receiver of the Desdemona Bank. But we think this contention cannot be sustained. If it be assumed that the telegram to appellee had the form and effect of a check on the appellee bank, directing the payment of the sum therein named, that alone, under our decisions, will not operate as an assignment of the funds.

In 2 Michie on Banks and Banking, p. 1110, § 140, it is said:

"In most jurisdictions, a check when not accepted is not an equitable assignment of a corresponding amount of the drawer's fund in the hands of the bank so as to operate as a transfer of the same to the payee. This is the

rule in Missouri, Ohio, North Carolina, New York, Pennsylvania, Tennessee, Texas, and in the Supreme Court of the United States."

The author in this connection names a few states in which the rule is held otherwise. But the text announces the rule as certainly followed in Texas. See Peters v. Hardin & Co. (Tex. Civ. App.) 168 S. W. 1035, and First National Bank v. Texas Moline Plow Co. (Tex. Civ. App.) 168 S. W. 420. In the last cited case it is said:

"It is well settled in this state that the mere giving of a check upon a bank even for valuable consideration does not, prior to its acceptance by the bank, operate as an assignment pro tanto of the amount standing to the credit of the drawer of the check."

See, also, House v. Kountze, 17 Tex. Civ. App. 402, 43 S. W. 561. In Negotiable Instruments Law, art. 6001A, § 189 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—189), it is declared that:

"A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check."

True, a contrary effect may be given where the evidence clearly shows an intent on the part of the drawer to assign to the drawee the amount specified in the check, but there can be no contention in this case that the evidence supports any such theory. The simple facts are, treating the telegram as a check (a form most favorable to appellee), it was never accepted by either the Kansas City bank or the Desdemona bank; there is no evidence whatever that the Kansas City bank received the telegram, and upon its receipt charged the amount specified therein to the appellee bank, or that the bank at Desdemona was ever given credit for the amount by the Kansas City bank, or even, so far as the evidence shows, had any knowledge or information as to the effect that it had been given a credit either by the Kansas City bank or by the Fort Worth bank for the sum of $15,000, or that the Desdemona bank at any time ever demanded payment of that sum, or any part thereof, from either the Kansas City bank or the Fort Worth bank.

In 5 Cyc. p. 515, under the title of Banks and Banking, and speaking of deposits to be specially applied, it is said:

"In using deposits made for the purpose of having them applied to a particular purpose the bank acts as the agent of the depositor, and if it fail to apply it at all, or misapply it, it can be recovered as a trust deposit"—citing decisions in support of the text from California, Georgia, Illinois, Kansas, Michigan, South Dakota, United States, and cases by the English courts.

In 2 Michie on Banks and Banking, p. 892, § 119, it is said, in speaking of deposits on transmission, that:

"Upon the deposit in a city bank of funds for transmission to the credit of a country bank, for the use of the creditor, the city bank becomes a trustee of the depositor; and, where the country bank, by reason of its failure before the deposit was made, becomes unable to receive the deposit, the city bank is liable to the depositor, in an action for money had and received, for the amount of the deposit. The fact that the city bank deposited the money with another city bank, which was the correspondent of the country bank, does not exempt the former bank from such liability, where the depositor was unacquainted with the custom of the banks in making such deposit, and did not consent thereto."

In the case of Drovers' National Bank v. O'Hare, 119 Ill. 646, 10 N. E. 360, it was held, quoting from the headnotes, that:

"Upon the deposit in a city bank, by a nonresident, of his own funds for transmission to the credit of his home bank for his use, the city bank becomes a trustee of the depositor; and where the home bank, by reason of its failure upon the day the deposit was made, becomes incompetent and unable to receive it, an action may be maintained against the city bank by the depositor to recover the money.

"The fact that the city bank, which was not the correspondent of the home bank, in pursuance of instructions from that bank, and in the line of custom of the city banks, deposited the money with another city bank which was the correspondent of the home bank, will not exempt it from liability where the original depositor was unacquainted with such custom and instructions, and did not consent to such deposit."

In the case of Cutler v. American Exchange National Bank, 113 N. Y. 593, 21 N. E. 710, 4 L. R. A. 328, the New York Court of Appeals held that, where a bank agreed to transmit money to a bank in a distant city for the use of a person named, and the plaintiff made with it a special deposit of the amount for that purpose, and received a letter of advice directed to a bank in such city, to the effect that the latter's account had been credited with the money for the use of the one to whom it was to go, plaintiff may recover back the deposit in case the correspondent bank fails before receiving the letter which was returned with the amount unpaid, and it was further held that the fact that the money was credited to the account of the correspondent bank on the books of the bank of deposit was immaterial.

The case of Cutler v. American Exchange Bank, 113 N. Y. 593, 21 N. E. 710, 4 L. R. A. 328, also by the Court of Appeals of New York, was one in which the plaintiff desired to remit a sum of money to a Leadville, Colo., bank for the use of H. To that end the defendant bank credited the depositor with $500 for the purpose stated, but before H. was informed of the credit intended for him the Leadville bank failed, and it was held that the depositor could recover the sum so deposited for him.

Other authorities could perhaps be cited, but those given, we think, will illustrate and fortify our conclusion. In our judgment the appellee bank, when directed, as it was, by the telegram from the State Bank of Sipe Springs to transmit to the Kansas City bank for the credit of the Desdemona bank the amount specified in the telegram, assumed to act as agent of the State Bank of Sipe Springs for the purpose of the transmission, and as agent it was its duty to follow instructions. While the evidence tends to show that upon the receipt of the telegram from the State Bank of Sipe Springs the appellee bank prepared a communication to the Kansas City bank, which, had it been delivered, would have completely exonerated the appellee bank from any further liability, and evidence tending to show that the appellee bank in fact prepared an appropriate telegram for the purpose, yet it does not appear very certainly that it was ever in fact delivered to the telegraph company, although one of the officers of the appellee bank gave it as his recollection that it was so delivered; at all events, it was never transmitted and delivered to the Kansas City bank, and at no time was there a transfer of the funds of the appellee bank to the Kansas City bank, or any credit given therefor, so that at all times the fund in fact remained with the appellee bank, and the real right thereto yet remained in the State Bank of Sipe Springs, and the appellee bank, in its continued custody and control of the funds, was in the attitude, as to that fund, of a trustee, and as such trustee, upon having ascertained that its telegram to the Kansas City bank had never been received, and that it had not been charged with the amount of the fund, was in duty bound to notify the beneficiary of the fund, the State Bank of Sipe Springs, of the changed situation, particularly in view of the fact that at the very time it appropriated a part of the fund to the payment of its own debt and delivered the remainder to the representative of the bank at Desdemona it had knowledge of the latter bank's insolvency. Good faith, it appears to us, on the part of the managers of the appellee bank, required nothing less than that the State Bank of Sipe Springs should have been informed of the changed conditions then within the knowledge of the managing officers of the appellee bank. It does not appear that the officers of the State Bank of Sipe Springs learned of the fact that its instructions for the deposit of the money in the Kansas City bank had not been followed, and of the further fact that the appellee bank had misapplied the $15,000 as stated, until long afterwards. Appellee, in support of its contention, presents a number of supposable cases in which it might be said that it was authorized to consider the $15,000 as equitably owned by the Desdemona bank, and hence to appropriate the fund as was done, but we need not attempt to answer such supposable cases. We have to deal only with the facts stated, which are undisputed, and thereunder we feel no hesitation in saying that the appellee bank is liable for the fund, either to the plaintiff stockholders, or to the commissioner of insurance and banking, as the case may be. As to the fund in question, appellee had no contractual or dutiful relations except with and to its principal, the State Bank of Sipe Springs, and is without any justiciable right arising out of considerations and transactions passing between the State Bank of Sipe Springs and others.

As to the issue of whether in the transfer of the assets of the State Bank of Sipe Springs to the Guaranty Bank of the same place the $15,000 asset in controversy was included depends, in part, at least, upon the intent and understanding of the parties at the time, and the issue, we think, requires a finding by the court or jury as to whether under all the circumstances, including the intent of the parties to the transaction, the Guaranty State Bank became the owner of the unenumerated asset in question.

Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.

### On Motion for Rehearing.

[4] The contention that the telegram, treated as a check, when accepted by the Fort Worth bank, operated as against the State Bank of Sipe Springs as an assignment, pro tanto, of the funds on deposit, and hence in equity entitled the Desdemona bank thereto, was sufficiently answered, we think, in our original opinion. It is now urged, however, that the same effect must be given to the fact that as a consideration for the telegram Smith gave the State Bank a certified check on the Desdemona bank. It is true the State Bank accepted the certified check and sent the telegram. But it is undisputed that this certified check was never paid, and, hence, under all of the authorities, the State Bank had the right to reverse its credit entries and repossess itself of the fund before its actual receipt by the Desdemona bank. Indeed, the evidence strongly suggests that Smith (the Desdemona bank) at the very time he drew the certified check and induced its acceptance by the State Bank knew he was insolvent and without the ready cash to pay his check, for it was not paid, and 15 days thereafter his insolvency was formally declared by the commissioner of insurance and banking, a receivership theretofore having been granted, presumably by a state court and possibly on the ground of Smith's insolvency. We cannot lend assent to the contention that the Desdemona Bank, under any view of the facts, became so clothed with right to the $15,000 fund in controversy as to authorize the appellee bank, without the knowledge or consent of the state bank or of its controlling officers, to appropriate said fund to its own use and

to that of the Desdemona bank. Other contentions presented in appellee's motion may, we think, be passed without discussion other than that given in our original opinion, and appellee's motion for rehearing will accordingly be overruled.

Appellants, however, also present a motion in which they urge that we set aside our order reversing and remanding the cause, and now here render judgment for the appellant stockholders, and we have concluded that we may properly do so.

It is made to appear that since our original opinion and judgment the commissioner of insurance and banking and appellants T. R. Bacon and associates have, upon a proper order of the district court, as provided by article 458, Complete Texas Statutes 1920, adjusted their differences in such a way as that appellant T. R. Bacon and associates are now the sole owners of the claim against the appellee bank.

It is apparent from our original opinion that the principal ground for remanding the cause for a new trial was that, as we viewed the case, the issue of ownership of the fund in controversy existing between the commissioner of insurance and the plaintiffs in the suit had not been determined, we, incidentally, leaving open the issue of limitation as between the commissioner of insurance and the appellee bank. It follows, we think, if we were correct in our original opinion in determining the right or want of right in the appellee bank, and we are of the opinion that we were, that, under the circumstances now presented, no material issue of fact remains for determination, unless it be the issue of limitation against the commissioner of insurance, urged by the appellee bank, which, of course, is not bound by the settlement agreement between the commissioner and the other appellants, to which agreement the appellee bank is not shown to have been a party.

[5] We have accordingly considered more carefully than on original hearing the evidence relevant to said issue of limitation, and think there can be no pretense that the appellant stockholders were barred of their action, and we have finally concluded that the evidence relating to the issue as against the commissioner of insurance is not of such probative force as would support a finding and judgment in favor of the appellee bank. We will not set out this evidence in detail, believing that it is sufficient to say, as already appears, in part, at least, in our original opinion, that the date of appellee's misapplication of the funds in controversy was on September 27, 1919; that appellee's reports to the State Bank of Sipe Springs were such as to create the belief that the fund had been transferred to the Kansas City bank as directed by the telegram, the State Bank being charged with the $15,000 and 70 cents additional, presumably as the cost of sending the telegram. In this condition of the State Bank's information, it dissolved its organization and sold to the State Guaranty Bank of Sipe Springs on January 20, 1920, its assets, as detailed in our original opinion. Among the assets so transferred to the State Guaranty Bank there was no bank entry or claim of the State Bank of Sipe Springs to the $15,000 in controversy, and nothing in its then records delivered to the State Guaranty Bank of Sipe Springs gave any indication or information that the fund intended to be transferred to Kansas City, as directed in the telegram, yet of right remained on deposit in the appellee bank for the benefit of the state bank. There is nothing in the evidence of probative force to show that the Guaranty State Bank of Sipe Springs, after its receipt of the assets and records of the State Bank, had any knowledge or information relating to the fact that the appellee bank retained or had disposed of any moneys which of right belonged to the State Bank or to its stockholders. The Guaranty State Bank continued its business until closed by the Commissioner of Insurance in May, 1921, when, for the first time, the commissioner appears to have been clothed with the duty of investigating the condition of the assets of the State Guaranty Bank, including those acquired from the State Bank. The commissioner filed his plea of intervention on the 27th day of April, 1922, less than two years after he took possession and control of the Guaranty State Bank and of its assets. As it seems to us, the conduct of the appellee bank, under all the circumstances, in legal effect amounted to a fraudulent concealment of the material fact which it was its duty to communicate, and which, under authorities too well known to require citations, would toll the statute.

We accordingly conclude that our former order remanding the cause should be set aside and judgment now here rendered in favor of appellant T. R. Bacon and his associates for the $15,000 which they sought to recover, together with interest thereon from September 27, 1919, at the rate of 6 per cent. per annum, and all costs of the trial court and of this court, and that the appellant the commissioner of insurance and banking take nothing by reason of his intervention.