# Wood's Estate.

*Contracts—Construction—Assignments—Equitable assignments —Decedents' estates—Distribution.*

1. While no particular words or form of instrument are necessary to constitute a valid assignment, appropriate words which in themselves are unequivocally expressive of an intention to transfer property are of such common usage, that when these are not employed in a transaction alleged to be an assignment, the inference may be drawn that they were not employed because not expressive of the intention of the parties.

2. The idea of assignment is essentially that of the transfer of property in which the assignee parts with the whole property in the thing assigned. An agreement under which the supposed assignor retains any control over the fund, authority to collect, or power of revocation, does not constitute an equitable assignment. The transfer must be of such a character that the holder of the fund can safely pay and is compellable to do so, though forbidden by the assignor.

3. The distributees under a will empowered and directed the executors and trustees thereunder to pay out of the income of the estate belonging to the distributees an annual sum of $3,000 to an uncle, deducting the same in equal proportions from the income of their respective shares, and reserved the right of revocation by

unanimous agreement of said distributees and without the consent of the uncle. Upon the filing of the account the Orphans' Court decreed that distribution be suspended until after the death of the uncle, on the ground that the direction to the executors and trustees amounted to an equitable assignment to the uncle. *Held,* error.

Argued Oct. 21, 1913. Appeal, No. 45, Oct. T., 1913, by Thomas D. Wood, from decree of O. C. Allegheny Co., Oct. T., 1912, No. 37, dismissing exceptions to adjudication in Estate of W. Dewees Wood, deceased. Before FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Reversed.

Exceptions to adjudication. Before MILLER, J. The opinion of the Supreme Court states the facts. The court dismissed the exceptions.

*Error assigned* was the decree of the court.

*Gordon Fisher,* of *Dalzell, Fisher & Hawkins,* for appellant.

*George E. Shaw,* of *Reed, Smith, Shaw & Beal,* for appellee.

OPINION BY MR. JUSTICE STEWART, January 5, 1914:

By a written agreement under seal, the children and distributees under the will of W. Dewees Wood, in consideration of mutual promises, and of love and affection, authorized and empowered the executors and trustees under said will to pay out of the income of the estate in their hands to Charles Gilpin, a maternal uncle, an annual sum of $3,000.00, or so much thereof as should accrue and be payable to the subscribers, deducting the same in equal portions from their respective shares; the payment of said annual sum to be a complete discharge and acquittance to the executors for the respective portions thereof, to be deducted from the respective shares

in said income. Acting under the authority thus given, the executors of the will have from time to time paid to Mr. Gilpin this annual sum. A second account of the executors exhibiting a large balance of income has been filed and confirmed; and this balance is now for distribution. No claim for participation therein has been made by any except the distributees under the will. At the audit the executors submitted the above in part recited agreement of the children and distributees, only, however, for the purpose of having it decided what, if any, effect it could have on the distribution of the fund in their hands. Charles Gilpin being still living, the court held that distribution should be suspended until his death, and decreed that the funds should be paid to the executors as trustees for the benefit of Charles Gilpin under and by virtue of the agreement referred to. From this decree one of the legatees under the will has appealed. The view that prevailed with the learned judge of the Orphans' Court and influenced his decision, was, that the written agreement of the distributees was in effect an equitable assignment of so much of decedent's estate to which they are entitled as would yield in the executors' hands $3,000.00 annually for the benefit of Mr. Gilpin. If this view be correct then the decree entered in the case was entirely proper, even though it result in vexatious delay for which the distributees themselves would alone be responsible. But we cannot agree that the view taken of the transaction by the court is correct. As we read it, it is nothing more than an executory agreement between the parties that they together, all contributing alike, will provide an annual sum for the comfort of their uncle; and as we view it, the provision that their distributive shares in the estate should be so employed so far as they would reach, and authorizing and empowering the executors to so apply them, was introduced solely with a view to promote their own convenience. It is purely a question of interpretation, and the thing to ascertain is the intention of the

parties to the instrument, it being strictly inter esse. It is to be remarked, first, that the agreement as written says nothing in express terms about assigning anything; it is entirely lacking in words which import a transfer of any property. True no particular words or form of instrument is necessary to constitute a valid assignment; but appropriate words which in themselves are so unequivocally expressive of an intention to transfer property are of such common usage, that when these are not employed in a transaction of this kind, a very reasonable inference would be that they were not employed because not expressive of the intention of the parties. In the next place, the idea of an assignment is essentially that of the transfer of property, in which the assignor parts with the whole property in the thing assigned. That the parties to this agreement had no intention of transferring property or property rights to Gilpin is manifest we think from the following provision in the agreement:

"The agreement shall become binding upon the execution by three or more, and shall be revocable by unanimous agreement of the subscribers without the consent of Charles Gilpin."

If an assignment, then the property passed from the assignors beyond their power to reclaim. The express reservation of the right to discontinue and dissolve the agreement at any time, is so wholly inconsistent with the assignment of the property, as to be persuasive in itself that the whole purpose of the agreement was to create mutual personal obligations for the payment in fixed proportions of a specified sum annually to Charles Gilpin, and not to create any right in him. Again, the provision in the agreement empowering the executors to pay directly to Gilpin rather than themselves, we can only regard as having been introduced for the convenience of the contracting parties. The executors were not the agents or representatives of Gilpin, but they

were the agents of the party to the agreement, made so by the agreement itself.

"Where the supposed assignor retains the subject under his own control by delivering the order, not to the assignee, but to his own agent, the transaction is not allowed to have the effect of an equitable assignment." 2 Am. & Eng. Ency. of Law 1061, and authorities there cited.

The executors here stand in no other relation than the chosen representatives of the parties to the agreement, through whom the bounty they agree to extend should be paid to the party entitled to be benefited. It is of no legal consequence that these representatives were to make payment out of the particular fund belonging to the parties to the agreement and which was in charge of the executors.

"An agreement to pay out a particular fund however clear in its terms, is not an equitable assignment...... The assignor must not retain any control over the fund, any authority to collect, or any power of revocation. If he does, it is fatal to the claim of the assignee. The transfer must be of such a character that the fund holder can safely pay and is compellable to do so, though forbidden by the assignor": Christmas v. Russell, 81 U. S. 69, 70.

For the reasons stated we are of opinion that however binding the agreement here set up may be as to the parties to it, it transfers no property right in the fund now for distribution to any one outside, and that for anything therein contained, the fund in court belongs to the distributees under the will. The decree here complained of is reversed and distribution is ordered according to the terms of the will.