## In re CLARK REALTY CO.

(Circuit Court of Appeals, Seventh Circuit. April 18, 1916. Rehearing Denied June 7, 1916.)

Nos. 2325, 2326, 2330.

1. ASSIGNMENTS ☞33—CONSTRUCTION—WHAT CONSTITUTE.

An agreement by the bankrupt, in consideration of a loan, to pay all rents, less cost of repairs, expenses, and insurance, to the lender, is not an assignment, being no more than an agreement to pay its debt, and the lender can enforce no lien against rents collected which were not paid over to it.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 64; Dec. Dig. ☞33.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. BANKRUPTCY ☞143(5)—RIGHTS OF TRUSTEE—MORTGAGEES.**

Until default and entry by the mortgagee, he is not entitled to the rents therefor, though the mortgage included all the rents, issues, and profits from the land, so the mortgagee cannot, until he assert his rights, by proceedings to sequester the rents, assert any lien on rents collected by the trustee after the bankruptcy of the mortgagor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 213, 214; Dec. Dig. ☞143(5).]

**3. BANKRUPTCY ☞253—DEBTS—PRIORITY.**

Bankr. Act July 1, 1898, c. 541, § 64a, 30 Stat. 563 (Comp. St. 1913, § 9648), declares that debts for taxes shall be entitled to priority. A mortgagee of real estate became bankrupt, and after bankruptcy the mortgaged premises were sold for unpaid taxes. No claims for the taxes were filed against the estate. *Held*, that mortgagees, having asserted no rights in rents collected from such premises after bankruptcy and before the tax sale, could not thereafter insist that such rents should be used in redeeming the property from purchasers at tax sales.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 349; Dec. Dig. ☞253.]

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

In the matter of the bankruptcy of the Clark Realty Company. Petitions by Juliet Gilbert and others against Julius J. Goetz, trustee, and others, by the Citizens' Savings & Trust Company and A. E. Kuolt, as Commissioner of Banking of the State of Wisconsin, against said trustee and others, and by August Richter, Jr., against said trustee. From orders of the District Court, affirming orders of the referee, petitioners appeal. Affirmed.

The above three appeals all grow out of the bankruptcy of the Clark Realty Company. There is a separate record in each appeal, and in each record is an agreed statement of the facts involved in that particular appeal. It will simplify matters to make one statement of facts and dispose of all the questions in one opinion. From the agreed statements the following facts appear:

The Clark Realty Company, a Wisconsin corporation engaged in real estate operations, was on February 3, 1914, on its voluntary petition, duly adjudged a bankrupt. On the same day a receiver was appointed for the property of the bankrupt. The receiver acted until the election and qualification of Julius J. Goetz as trustee of the bankrupt on April 3, 1914. The bankrupt corporation owned a large amount of real estate, and its entire income consisted of rents derived from its various properties. Most of its real estate was incumbered; some of the properties being subject to one mortgage, and others subject to two and three mortgages. The mortgages involved in the first two of the above appeals, No. 2325 and No. 2326, contained provisions mortgaging "the rents, issues, and profits issuing and to issue out of said premises." It does not appear from the agreed statement of facts that the mortgage asserted by Richter, trustee, in cause No. 2330, contained such a provision.

The Citizens' Savings & Trust Company is a corporation organized and existing under the laws of the state of Wisconsin as a trust company bank, and lately engaged in carrying on said business at the city of Milwaukee. On the 2d day of October, 1913, A. E. Kuolt, who then was, and still is, the duly appointed, qualified and acting commissioner of banking of the state of Wisconsin, as such commissioner of banking, and by virtue of the laws of Wisconsin, took possession of the property, business, affairs, and assets of the Citizens' Savings & Trust Company, by reason of its being determined by him to be a delinquent banking corporation, and ever since that time has been, and still is, in possession and charge of its property, and is engaged in winding up and liquidating its affairs.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

234 F.—37

On November 1, 1912, the Clark Realty Company was indebted to the Citizens' Savings & Trust Company for moneys theretofore advanced to the bankrupt, by way of overdrafts, and otherwise, in the sum of $27,550.06 and accrued interest thereon, amounting to $882.50. At the same time the books of the trust company showed an indebtedness owing to it by various other corporations controlled by the people who controlled both it and the bankrupt, amounting to $34,584.85. On November 1, 1912, interest on the mortgage indebtedness of the bankrupt amounting to $12,061.50 became due and the Citizens' Savings & Trust Company was requested by Clark Realty Company to advance to it sufficient further moneys to pay such interest. The matter was considered at a meeting of the board of directors of the trust company, and on or about November 7, 1912, the realty company made, executed, and delivered to the trust company its 75 promissory notes, for $1,000 each, dated November 1, 1912, and due on or before three years after date; and to secure the same, the realty company made, executed, and delivered to the trust company a second mortgage upon various parcels of real estate owned by said bankrupt, which mortgage was dated November 1, 1912, acknowledged November 7, 1912, and recorded in the office of the register of deeds for Milwaukee county on the 10th day of March, 1913. About the same time, and as a part of the same transaction, there was executed and delivered to the trust company the following instrument in writing:

"T. J. Pereles.                Cable Address
"N. Pereles, Jr.               'Pereles.'
"E. G. Rahr.
"C. E. Canright.
"Nath. Pereles & Sons, Counselors at Law, Pereles Bldg., Milwaukee, Wis.
                  "November 1, 1912.
"Citizens' Savings & Trust Co., Milwaukee—Gentlemen: In consideration of your company granting to the undersigned a loan of $75,000, with which to pay interest and other charges in which we are interested, the undersigned agrees to pay to your company monthly, or at such other times as desired, all rents derived from our various properties, less cost of repairs, expenses, and insurance. Such money to be used to pay the above loan. All such money shall be collected and deposited in separate bank for that purpose.
  "Very truly yours,         Clark Realty Co.,
       "[Signed] By Nathan Pereles, Jr., Treasurer."

The consideration for said notes and mortgage and the agreement of November 1, 1912, was the advancement by the trust company to the realty company on November 1, 1912, of $12,061.50 to pay interest charges then due and owing by said realty company on its mortgage indebtedness, the payment of the indebtedness then owing by the bankrupt to the trust company represented by overdrafts amounting to $27,550.06, and accrued interest thereon amounting to $882.50, and the payment of the indebtedness owing to the trust company by various other corporations represented by their overdrafts amounting to $34,584.85. Said sum of $12,061.50 was advanced by the trust company to the bankrupt in payment of such interest charges and the aforesaid overdrafts were canceled on the books of the trust company.

T. J. Pereles and J. M. Pereles controlled both the Clark Realty Company and the Citizens' Savings & Trust Company, and the agreed statement of facts shows that there was some irregularity with regard to the election of a treasurer of the realty company and some question as to the authority of Nathan Pereles, Jr., to execute the agreement of November 1, 1912; but the view we take of the question involved in this branch of the case does not require further reference to this feature.

Monthly after November 1, 1912, and continuing to October 1, 1913, the bankrupt voluntarily prepared and delivered to the trust company a statement showing the rents collected by it during the preceding month from its various properties, which statement showed the receipts, the disbursements made for repairs, expenses and insurance, and the net proceeds less the disbursements, and accompanied these statements with payment of such net proceeds. The moneys so paid over included not only the net rents collected from the properties covered by the $75,000 mortgage to the trust company, dated November 1,

1912, but the net rents derived from all of the real estate owned by the bankrupt, including that acquired by it after November 1, 1912.

No statements or payments of rent collections were made or rendered by the bankrupt to the trust company after October 1, 1913. The last net rents accounted for to the trust company were the rents collected during the month of August, 1913. The rents collected by the bankrupt from its various properties after that time, beginning September 1, 1913, and up to the time of its adjudication in bankruptcy, were not paid over to the trust company, but were retained by the bankrupt and by it treated as its general funds, out of which all its expenses were paid, and the balances were kept in bank and evidenced by certificates of deposit obtained by it, which were turned over by the bankrupt to the receiver in bankruptcy upon its appointment, as a part of the general assets of the bankrupt. The receiver continued the collection of the rents until the election and qualification of a trustee in bankruptcy, and thereafter the trustee collected the rents, until by virtue of orders made and entered by the District Court, he abandoned as burdensome the various properties of the bankrupt from which the rents involved in these appeals were derived, all of the property so abandoned being incumbered beyond its realizable value. The trustee has in his possession $17,233.50 net rentals collected by the bankrupt, by the receiver and by the trustee.

After the trustee had abandoned the properties from which these rents were derived, the trust company and Kuolt, as commissioner of banking, filed their petition with the referee setting forth the execution and delivery of the aforesaid notes, mortgage, and agreement of November 1, 1912, the delivery by the bankrupt to it thereafter of the net rents collected from November 1, 1912, to August 31, 1913, and alleging that no rents collected subsequent thereto had been turned over to it, that they were still the owners and holders of said notes and mortgage and agreement, that the sum of $73,500 and accrued interest was still unpaid and owing thereon, and claiming an equitable lien upon all of the funds in the trustee's possession, derived from net rents collected by the bankrupt from September 1, 1913, to the date of the adjudication in bankruptcy, by the receiver in bankruptcy and by the trustee since his election and qualification as trustee, and praying for an order directing the trustee to deliver and pay over to them all of said moneys.

On March 31, 1914, Elizabeth Gilbert, as owner of three of 15 $1,000 notes executed by the bankrupt and secured by mortgage on a portion of the real estate held by the bankrupt and the rents thereon, and Nellie Gilbert, as owner of 7 of 30 $500 notes executed by the bankrupt and secured by mortgage on another piece of real estate and its rents, intervened in said bankruptcy proceedings and by petition alleged their respective mortgage liens, that their security was wholly inadequate and the equity of redemption of no value, that they and others similarly interested were prevented from acquiring the rents and from foreclosing their mortgage liens by the order entered at the time of the adjudication, restraining all persons from intermeddling with or taking possession of any of the rights, credits, effects, or property of the bankrupt or in any manner interfering with the receiver in possession of same.

Pursuant to the prayer of this petition, the receiver and the trustee when elected were ordered to show cause before the referee on April 7, 1914, why the said premises should not be abandoned to the lien holders or why the restraining order should not be modified so as to permit foreclosure by the lien holders and the application of the rents, and why the rents of the said property should not be turned over to the lien holders, and for such other relief as might be just and equitable.

A similar application was made by petition filed July 31, 1914, by A. F. Sauer as the owner of a $3,300 mortgage executed by the bankrupt, covering certain real estate and its rents and duly recorded October 27, 1911, upon which a similar order to show cause was issued, returnable August 19, 1914. Before the hearing of said petition by the referee on November 12, 1914, a supplemental petition in behalf of and including said Sauer, Elizabeth and Nellie Gilbert and the owners of the remaining notes secured by the mortgages which they asserted, was filed.

On or about the 1st day of March, 1905, the bankrupt duly made and issued, for the purpose of borrowing money, its certain bonds to an aggregate amount

of $150,000, the par value of such bonds being $500 each, wherein and whereby said bankrupt promised to pay the holders thereof, at the office of the Citizens' Savings & Trust Company, on or before March 1, 1910, the aggregate sum of $150,000. The time of payment of said bonds was extended to and including the 1st day of March, 1915. All of said bonds were duly issued and negotiated, and there is now outstanding and due thereon the sum of $143,500, and these bonds are held by various individuals.

To secure the payment of these bonds, the bankrupt, on the 1st day of March, 1905, duly made, executed and delivered to the said Citizens' Savings & Trust Company a trust deed or mortgage covering various parcels of real estate owned by said bankrupt. Said mortgage was duly executed and acknowledged and recorded in the office of the register of deeds for Milwaukee county, on the 17th day of May, 1909.

The bankrupt failed to comply with the terms of said bonds and with the conditions of said mortgage or trust deed by failing to pay the interest on said bonds which was payable on the 1st day of November, 1913, and by failing to pay any interest on said bonds since the 1st day of May, 1913, having defaulted in the installment of interest due November 1, 1913, and failing to pay any interest on said bonds since said date, and failing to pay the principal thereon on March 1, 1915, and by failing to pay the taxes levied on said real estate for the year 1913. The real estate included in said mortgage or trust deed is inadequate and insufficient security for the bonds outstanding.

On the 7th day of November, 1914, August Richter, Jr., by the circuit court of Milwaukee county was duly appointed trustee to succeed the Citizens' Savings & Trust Company, and he is the duly qualified and acting trustee under said deed of trust and as such trustee is authorized to institute and carry on the proceedings here involved.

From September 1, 1913, to February 3, 1914, the date of the adjudication in bankruptcy, the rents and profits of the real estate covered by the last mentioned mortgage were collected by the bankrupt, commingled with its general funds, and such general funds as it had remaining on hand at the time of the receiver's appointment were turned over to the receiver. From February 3, 1914, to the date of the abandonment of the property above mentioned, the rents and profits of said premises covered by said mortgage were collected by the receiver and trustee in bankruptcy. The aggregate amount of rents and profits so collected by said receiver, trustee and bankrupt derived from said premises covered by said mortgage was $3,129.31. Taxes were duly levied and assessed on said premises covered by said trust deed or mortgage for the year 1913 aggregating $4,526.38. The taxes levied and assessed on said real estate covered by said mortgage which was income producing aggregated $3,766.54. Said taxes were not paid and on February 25, 1914, the said premises were sold for the payment of the taxes levied by the city of Milwaukee on said real estate, and on May 20, 1914, the said real estate was sold for the unpaid taxes levied and assessed by the state and county and the purchasers on said sales paid the amount of outstanding taxes, which payment was evidenced by tax certificates duly issued to them and now outstanding.

On the 12th day of November, 1914, Richter, trustee, petitioned the referee to order the trustee in bankruptcy to turn over to him the rents and profits collected from said mortgaged premises or to direct the trustee to use the rents so collected in payment or redemption of the taxes for which said premises were sold, as stated. Other petitions were filed by other mortgagees of properties belonging to the bankrupt estate seeking the rents in the trustee's possession and answers were filed by the various parties in interest. The referee heard the evidence, considered the various petitions and denied the petition of the Citizens' Savings & Trust Company and Kuolt, as commissioner of banking, denied the petition of Richter, trustee, and allowed the claims of Juliet Gilbert and other claimants for rents accruing subsequent to the filing of their intervening petition and denied their claims for rents prior thereto. Petitions to review were presented to the District Court and by it the action of the referee was in each instance approved, and from this action of the District Court these appeals are taken.

Louis A. Lecher, Charles T. Hickox, and Fred C. Ellis, all of Milwaukee, Wis., for appellants.

Lawrence Olwell, of Milwaukee, Wis., for appellees.

Before MACK and ALSCHULER, Circuit Judges, and ANDERSON, District Judge.

ANDERSON, District Judge (after stating the facts as above).  [1] First. As to the appeal of the Citizens' Saving & Trust Company and Kuolt, commissioner of banking:

It is insisted that the trustee, having abandoned as burdensome the real estate theretofore belonging to the bankrupt, was not entitled to hold the net rents collected by himself and the receiver in bankruptcy; that the trustee's abandonment of the real estate carried with it the rents he had collected therefrom; that the same reverted to, or the title thereto became vested in, the bankrupt, this being the legal effect of an abandonment; and that the bankrupt made no claim to the rents and could not do so because of the superior equities of the Savings & Trust Company and the commissioner of banking.

We are not now concerned with the title of the bankrupt to these rents, but with the claim of the trust company to them. This claim is based upon the letter of November 1, 1912, hereinabove set out, and the circumstances under which it was executed, and it is insisted that this instrument, under the circumstances of its execution, operated as an equitable assignment and created a lien in favor of the trust company. In our opinion, it was a mere promise to pay. The agreement of the bankrupt to collect the rents was merely an agreement to collect what was its own and the agreement to pay over was no more than the agreement to pay its own debt. Something more was necessary to amount to an assignment of, or create a lien upon, the rents. As was said by the Supreme Court in Christmas v. Russell, 14 Wall. 69, 20 L. Ed. 762:

"An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment; a covenant in the most solemn form has no greater effect. The phraseology employed is not material provided the intent to transfer is manifested. Such an intent and its execution are indispensable. The assignor must not retain any control over the fund—any authority to collect, or any power of revocation. If he do, it is fatal to the claim of the assignee."

In Trist v. Child, 21 Wall. 441, 22 L. Ed. 623, the same court said:

"It is well settled that an order to pay a debt out of a particular fund belonging to the debtor gives to the creditor a specific equitable lien upon the fund, and binds it in the hands of the drawee. A part of the particular fund may be assigned by an order, and the payee may enforce payment of the amount against the drawee. But a mere agreement to pay out of such fund is not sufficient. Something more is necessary. There must be an appropriation of the fund pro tanto, either by giving an order or by transferring it otherwise in such a manner that the holder is authorized to pay the amount directly to the creditor without the further intervention of the debtor."

In Hare & Wallace's notes to Leading Cases in Equity, it is said:

"A covenant on the part of the debtor, to apply a particular fund in payment of the debt as soon as he receives it, will not operate as an assignment,

for it does not give the covenantee a right to the funds, save through the covenantor, and looks to a future act on his part as the means of rendering it effectual."

See also Christmas, Administrator, v. Griswold, 8 Ohio St. 559; Silent Friend Mining Company et al. v. Abbott et al., 7 Colo. App. 73, 42 Pac. 318; Hossack v. Graham et al., 20 Wash. 184, 55 Pac. 36.

Tested by the above principles and authorities, the agreement in question did not operate as an equitable assignment, nor did it create any lien in favor of the trust company; and the decision of the referee and the District Court upon this branch of the case was correct.

[2] Second. As to the claim of the mortgagees to the rents and profits:

The referee held that these rents belonged to the mortgagees from the time when by intervening petitions they claimed them, but denied their right to them prior to the date of the claim. Much of the brief of counsel for the mortgagees is devoted to the proposition that the clause in the mortgages including with the property mortgaged "all the rents, issues and profits issuing and to issue out of said premises," is valid. There can be no question as to the validity of this clause. The question is as to its effect. This clause in the mortgage did not give to the mortgagees an absolute right to the rents. Until there was a default and until the mortgagees made some claim or demand for the rents, they belonged to the mortgagor. Until the mortgagee takes some steps to sequester the rents, he is not entitled to them. "Ordinarily the mortgagor is entitled to rents and profits accrued up to the time that the mortgagee enters, or brings his right of entry or his bill to foreclose, and this right inheres in a trustee in bankruptcy." In re Chase (D. C.) 133 Fed. 79, and cases cited. To the same effect are Freedman Savings & Trust Company v. Shepherd, 127 U. S. 494, 8 Sup. Ct. 1250, 32 L. Ed. 163; New York Security & Trust Company v. Saratoga Gas & Electric Company, 159 N. Y. 137, 53 N. E. 758, 45 L. R. A. 132; Wyckoff v. Scofield, 98 N. Y. 475; Rider v. Bagley, 84 N. Y. 461; United States Trust Company v. Wabash Railway, 150 U. S. 287, 306–308, 14 Sup. Ct. 86, 37 L. Ed. 1085.

Under these authorities the decision of the referee and the District Court, giving to the mortgagees the rents from and after the time they made claim for them and denying the rents accruing prior to such claims, was correct.

[3] Third: As to the claims of Richter, trustee:

Richter, trustee, petitioned the referee to order the trustee in bankruptcy to turn over to him all rents and profits collected from the premises included in his mortgage, or to direct the trustee to use the rents so collected in payment or redemption of the taxes for which said premises were sold, as stated. This petition was denied by the referee and his order was affirmed by the District Court. As to the denial of the petition to turn over the rents and profits, we need not add anything to what we have already said.

The trustee for the bondholders or the bondholders themselves could have come into the bankruptcy proceedings and petitioned the court for a sequestration of the rents and profits accruing from the

mortgaged premises, but until some such steps are taken, neither the trustee nor the bondholders can assert any right to the rents and profits. This, of course, is predicated upon the proposition that the mortgage held by this trustee had a clause in it covering the rents and profits, but it nowhere appears in the agreed statements of facts in these cases that the mortgage in question contained any such clause and in the absence of such clause, it is difficult to see what possible claim Richter, trustee, can have to these rents and profits.

As to taxes, Richter, trustee, bases his petition on section 64a of the Bankruptcy Act, which is as follows:

"Debts which have priority.—The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district, or municipality in advance of the payment of dividends to creditors," etc.

It appears that the taxes for the year 1913 were not paid; that on February 25, 1914, the premises were sold for the payment of city taxes and on May 20, 1914, they were sold for the state and county taxes. The purchasers at the sales paid the amount of outstanding taxes and tax certificates were duly issued to them and now outstanding. Richter, trustee, filed his petition to have the rents used in redemption of the taxes on the 12th day of November, 1914. Whether Wisconsin real estate taxes due at the date of adjudication constitute a personal debt of the owner, as well as a lien on the property, so that a claim therefor would be allowable against his estate in bankruptcy and would be entitled to priority, we need not consider; for here no claim was filed. Moreover, the mortgagee stood by and saw the property sold for these taxes, and made no application to the bankruptcy court for an order to pay them while the bankruptcy trustee was in possession or before the tax sales; then after the trustee had abandoned the property, Richter asked the court to apply the rents, not in the payment of taxes then due and owing, but to the redemption of the property from tax sales already made. Even if the trustee in this mortgage could have procured an order upon the trustee in bankruptcy to pay these taxes upon seasonable application therefor, there is no basis for his application, after the tax sales, and after the abandonment of the property to have rents which do not appear to be covered by his mortgage applied to the redemption from sales for taxes.

The referee's orders and the decisions of the District Court were proper, and they are affirmed.