**MARVIN, Banking Commissioner of Kentucky, v. MARTIN.**

Circuit Court of Appeals, Sixth Circuit.
July 21, 1927.

No. 4690.

1. **Banks and banking ☞134(7)—Transaction held not to make bank trustee of fund arising from sale of bonds of depositor, and by her direction credited to account of correspondent bank.**

Defendant owned government bonds, which were about to mature, and were on special deposit with a Cincinnati bank. She arranged with a local bank in which she was depositor, for reinvestment, and sent an order to the Cincinnati bank to sell the bonds and put the amount to the credit of the local bank, of which it was correspondent. It did so, notifying defendant and the local bank of the amount credited to its account "for use of" defendant. *Held*, that the qualifying words meant no more than that the amount was for credit by the local bank to defendant, and did not make the Cincinnati bank trustee of the fund, and required to hold it for defendant on failure of the local bank.

2. **Banks and banking ☞75—Amount remaining to credit of insolvent bank with its correspondent bank held trust fund for depositor, whose deposit was received after insolvency.**

The local bank being insolvent and knowing the fact, when the money was deposited in its account, its receipt was fraudulent, and the bank held the deposit as trustee for defendant, and as between them the amount which had remained continuously to its credit with the Cincinnati bank, until it failed, not exceeding such deposit, belonged to defendant.

3. **Damages ☞67—Banking commissioner held liable for interest on trust fund withheld from owner by litigation.**

Banking commissioner, as administrator of insolvent bank, *held* liable for interest, as damages, on trust fund withheld from owner by litigation.

Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Bill of interpleader by the Fifth-Third National Bank of Cincinnati against C. E. Marvin, Banking Commissioner of Kentucky, and Annie R. Martin. From the decree, Marvin appeals. Reversed and remanded.

R. T. Dickerson and Morrow, Dickerson & Kittering, all of Cincinnati, Ohio, for appellant.

W. T. Fowler and O'Rear, Fowler & Wallace, all of Frankfort, for appellee.

Before DENISON and MOORMAN, Circuit Judges, and KILLITS, District Judge.

DENISON, Circuit Judge. The Fifth-Third National Bank of Cincinnati (hereinafter called the Cincinnati bank) filed a bill of interpleader in the court below against the parties to this appeal, and upon paying the fund into court was discharged. Marvin was, under the Kentucky statute, the representative of the failed Deposit Bank of Sulphur, a Kentucky state bank (hereinafter called the Sulphur bank). Mrs. Martin was a regular depositor of that bank. For some years she had owned government bonds of $6,000 par value, and they had been held for her by the Cincinnati bank as a special deposit. As they were about to mature, the Cincinnati bank advised her that they ought to be sold and the proceeds reinvested. She consulted with the cashier of the Sulphur bank about reinvestments, and understood that he had found, or would find, mortgages which would be desirable therefor. Thereupon she gave a written order to the Cincinnati bank to sell the bonds and "put the amount to the credit of the Deposit Bank of Sulphur." Her letter to this effect was inclosed in a letter from the Sulphur bank to the Cincinnati bank, saying that "Mrs. Martin desired to sell these bonds and place the amount to the credit of the Deposit Bank of Sulphur for her use." The Cincinnati bank was the city correspondent of the Sulphur bank and carried its account.

All debts which might from time to time accrue from the Sulphur bank to the Cincinnati bank were secured by a deposit of ample collateral. Pursuant to these letters, the Cincinnati bank, on October 25, sold these bonds, receiving $6,092, and credited the account of the Sulphur bank with that amount. It then by letter notified Mrs. Martin that this had been credited to the Sulphur bank for her use, and in the same words notified the Sulphur bank of the credit to it.

The Sulphur bank was then in fact hopelessly insolvent, and had been for a long time. Its doors were closed by the banking commissioner on October 29th. Between the morning of the 25th and the end of the day on the 28th, the Cincinnati bank had paid checks by the Sulphur bank against its deposit to such an extent as to exhaust the credit balance on the morning of the 25th, and all deposits thereafter made, except this one of $6,092, and to infringe upon this one to the extent of leaving in its hands an ultimate deposit of $3,700.51—the deposit having not at any time been reduced below this sum. Upon learning, on the 29th, of the insolvency of the Sulphur bank, the Cincinnati bank applied this $3,700.51 as a credit upon its notes against the Sulphur bank. Thereafter it sold a part of its collateral, realizing enough to pay all the remainder of its notes and claims against the Sulphur bank and leave a surplus of $6,500. This it paid into court in connection with the interpleader bill; the remainder of the collateral it returned to the banking commissioner. The court below decreed that Mrs. Martin was entitled to her entire $6,092, with interest, out of the fund in court, on the theory that, because the $6,092 was to be credited to the Sulphur bank *for the use* of Mrs. Martin, it became and continued to be, in the hands of the Cincinnati bank, charged with a trust in favor of Mrs. Martin, which would not be discharged until the Cincinnati bank had acted to its ultimate prejudice in disbursing the fund upon the orders of the Sulphur bank; that the Cincinnati bank could not take this fund and apply it upon its own debt; and that, in so far as it had paid therefrom the checks of the Sulphur bank, it could and should reimburse itself out of its other collateral and keep Mrs. Martin harmless.

[1] We are not able to see that a trust in this fund arose in the manner and to the extent just stated. The authority from Mrs. Martin to the Cincinnati bank to credit these proceeds to the account of the Sulphur bank was complete. The normal meaning of her instructions was that the Sulphur bank would become a creditor of the Cincinnati bank to the extent specified, and Mrs. Martin would become a creditor of the Sulphur bank. The notice from the Cincinnati bank that the funds were credited to the Sulphur bank, *for the use* of Mrs. Martin, does not seem to us to mean more than that they were for her account, and to be credited by the Sulphur bank to her, and subject to withdrawal by her. We see no clear distinction between "for the use of" and "for the account of," or "to the credit of." It is true the Cincinnati bank had knowledge that Mrs. Martin intended to maintain the integrity of this fund until it was reinvested, but this would normally be accomplished by the maintenance by the Sulphur bank of this amount to the credit of Mrs. Martin ready for her use. In Drovers' Bank v. O'Hare, 119 Ill. 646, 10 N. E. 360, the transaction involved was as if the Sulphur bank here, knowing its insolvency, had declined to accept the credit. To make Cutler v. American Bk., 113 N. Y. 593, 21 N. E. 710, 4 L. R. A. 328, analogous, we would have to overlook Mrs. Martin's existing relations with the Sulphur bank, and her express direction that the deposit be made to its credit. Upon this question, making the Cincinnati bank a trustee, we cannot distinguish our case from the one which would have existed if the fund had been physically transferred and put into the Sulphur bank to Mrs. Martin's credit.

[2] However, a trust sufficiently appears upon another ground. The Sulphur bank was then insolvent, the cashier knew it to be, and a receipt by it of this deposit from Mrs. Martin was fraudulent. These facts made it, as between the parties, a trust fund rather than an ordinary deposit. St. Louis Co. v. Johnston, 133 U. S. 566, 577, 578, 10 S. Ct. 390, 33 L. Ed. 683; Brennan v. Tillinghast (C. C. A. 6) 201 F. 609, 615. When we inquire whether the identity of the fund has been sufficiently preserved, we are likely to be confused if we think of the Sulphur bank, which thus became trustee, as a bank receiving further deposits into and making payments out of its general funds. Such transactions, if there were any, have now no necessary bearing. It avoids confusion to think of this trustee being simply, as it was, a depositor in the Cincinnati bank. It received this trust fund of $6,092, and mingled it with its existing deposit in the bank. Thereafter it drew checks which exhausted its formerly existing deposit and unlawfully impaired this trust fund. It made deposits which under established principles would be applied to cover the current withdrawals as far as these current deposits would go. There is nothing to indicate that these deposits were not the sole property of

the trustee, not subject to any trust or charge in favor of anybody else. It is of course possible that they were current deposits made by others with the Sulphur bank, which also, because of its insolvency, assumed a trust character; but there is no evidence to that effect, and any such conclusion is unnecessary, because they may as well have been the proceeds of debts due to the Sulphur bank, or have been otherwise the free property of that bank.

Upon the principles settled for this court by Brennan v. Tillinghast, supra, at page 613, and Southern Co. v. Elliotte, 218 F. 567, 570, 571, it follows that this sum of $3,700 remaining in this deposit on October 28th was, between Mrs. Martin and the Sulphur bank, equitably her property. It is unnecessary to consider what adverse rights the Cincinnati bank might have had therein as a Sulphur bank creditor, since, at the most, it had two securities for this debt, while Mrs. Martin had one, and it would have been equitably bound to exhaust its other securities before resorting to this. It is immaterial that the Cincinnati bank did not have immediate notice of Mrs. Martin's claim. If it might have supposed that she had been paid in full by the Sulphur bank, it was later undeceived, and nothing had happened which could not be rescinded in order to protect Mrs. Martin, and without prejudice to any one. Accordingly, this amount, $3,700, of the fund received by the Cincinnati bank on the sale of its collateral, should be considered as replacing the deposit fund of like amount which the Cincinnati bank had applied upon its own debt, and to this extent the decree below was right.

We cannot, upon this theory, work out the claim of Mrs. Martin to the remainder of the fund. She had allowed it to be put under the control of the Sulphur bank, and the remainder that bank had drawn out of the deposit and dissipated. Its identity was lost and the trust cannot be enforced. Board of Com'rs of Crawford County v. Strawn (C. C. A. 6) 157 F. 49, 51, 15 L. R. A. (N. S.) 1100. As to this remaining amount, she must be treated as a general creditor of the Sulphur bank.

[3] We think the court below was right in allowing interest to Mrs. Martin from the date of the deposit in court, though the interest should be paid upon the $3,700, and not upon the full amount. This is not interest on the fund, as interest thereon. The fund has been in court, and, so far as the record shows, has drawn no interest. This so-called interest should be paid as damages awarded against the banking commissioner for having delayed the payment of this money by this litigation; and, since the balance of the fund which Mrs. Martin does not get must go to the banking commissioner, it is merely a short cut to have this so-called interest paid to her out of the fund.

The decree below will be reversed, and the case remanded, for the entry of a new decree in accordance with this opinion. Appellant, having secured a substantial reduction of the judgment against him, will recover the costs of this court.