## SCHARNBERG et al. v. CITIZENS' NAT. BANK OF SPENCER, IOWA, et al.

Circuit Court of Appeals, Eighth Circuit.
July 6, 1929.

No. 8368.

Paul M. Hatfield, of Sioux City, Iowa (Arnold L. Fribourg and Ernest J. Fribourg, both of Sioux City, Iowa, and Buck & Kirkpatrick, of Spencer, Iowa, on the brief), for appellants.

J. T. Burke, of Sioux City, Iowa (Le Roy A. Rader, of Spencer, Iowa, and David W. Stewart and R. H. Hatfield, both of Sioux City, Iowa, on the brief), for appellees.

Before KENYON and VAN VALKENBURGH, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge. Appellants on and prior to the 8th day of November, 1926, were operating at Spencer, Iowa, what was known as the Bank of M. E. Griffin. The Citizens' National Bank, one of appellees herein (the receiver of that bank is the other appellee), was located in the same town. On November 6, 1926, the Citizens' National Bank, being hard pressed financially, sent a representative to Chicago, to obtain, if possible, from the Federal Reserve Bank at Chicago, a loan of $50,000, failing which he was instructed to bring back a bank examiner to take charge of the bank. On the same day, November 6th, an official of the Citizens' National Bank called an official of the Griffin Bank by telephone and asked if the Griffin Bank could supply the Citizens' National Bank with $4,000 in currency. The official of the Griffin Bank replied that the vault of that bank at that time (it was then Saturday afternoon) was closed. On the opening of the Citizens' National Bank on Monday morning, November 8th, one of the officials again called the Griffin Bank, asked for an advance of $4,000, and was told that the advance would be made. An official of the Citizens' National then went to the Griffin Bank, drew a draft in the amount of $4,000 on the Continental & Commercial National Bank of Chicago in favor of the Griffin Bank, received therefor $4,000, took the currency to the Citizens' National, and placed it in the cash of that bank. At the time of this transaction and prior thereto no information was given by the Citizens' National Bank to the Griffin Bank as to the former's financial

difficulties, as to the fact its representative had been sent to Chicago, or as to the instructions with which he had been sent. The deposits received on November 8th at the Citizens' National were segregated, identified, and, as to some of them, at least, later returned to depositors. On the morning of November 9th, the loan of $50,000 sought from the Federal Reserve Bank having not been obtained, the Citizens' National did not open. It had then at hand in cash $4,412.81, in addition to the segregated deposits received on November 8th. Its affairs were taken over by a receiver. Payment of the $4,000 draft was refused by the Continental & Commercial National Bank. Thereafter this suit was brought to recover $4,000 from the appellees.

At the trial it was conceded by appellees that on November 8th the Citizens' National Bank was insolvent, but not that its officers knew that it was insolvent.

The case is here on appeal from the decree of the District Court in favor of the appellees.

Appellants contend that they were entitled to recover on one or both of two legal theories. The first is that the facts here created in their favor an equitable assignment to the amount of $4,000 of funds of the Citizens' National Bank on deposit with the Continental & Commercial National Bank of Chicago. The second is that from the facts here it should have been found that the $4,000 given to the Citizens' National Bank by the appellants became a trust fund in the hands of that bank, and that, since the funds in the hands of the receiver were augmented thereby, the appellants were entitled to a preference over general creditors.

■■ 1. In support of the theory of equitable assignment, the appellants rely on the case of Fourth Street National Bank v. Yardley, 165 U. S. 634, 17 S. Ct. 439, 41 L. Ed. 855. That case, however, is not in point.

In the Yardley Case, the borrowing bank was in a condition of financial embarrassment, that fact was known to its officers, and *was represented to the lending bank at the time application was made for funds and at the time the draft of the borrowing bank was given to the lending bank.* The important fact was this last, that the condition of the borrowing bank was made known to the lending bank. Because that fact was in the minds of the officers, both of the lending and of the borrowing bank, the Supreme Court said that no other conclusion was possible than that the "parties must have and did intend to create a particular appropriation, charge or lien on the property upon the faith of

which they both dealt." Further, the Supreme Court said (165 U. S., loc. cit. 652, 17 S. Ct. 443):

"When we consider the situation and conduct of the parties, the disclosures made at the time of the contract, and weigh the probabilities of the case, it is impossible to infer otherwise than that it was intended that the particular fund in the Tradesmen's Bank should be not only the source from which payment of the check to be given should be made, but that the fund should be transferred and appropriated pro tanto for that purpose. It is, of course, true, that the method adopted to evidence the appropriation was a check drawn generally upon the Tradesmen's Bank, but, as already stated, the authorities are clear that when it is established that it was the intention and agreement of the parties to a transaction that a check drawn generally should be paid out of a particular fund, such check, as between the parties, will be treated as though an order for payment out of a specific, designated fund. * * * "

Clearly in the present case there is a complete absence of that fact which was in the Yardley Case the important fact, namely, knowledge on the part of *both* parties to the transaction that the borrowing bank was in an embarrassed condition. An intention on the part of both parties that a check shall be paid out of a particular fund cannot be inferred from knowledge which only one of the parties has.

■ 2. Before the second theory advanced by the appellants, the trust fund theory, is applicable, the appellants must have shown not only that the borrowing bank at the time it obtained funds from the appellants was insolvent, but also that the officers of that bank knew that it was insolvent. St. Louis & San Francisco R. Co. v. Johnston, 133 U. S. 566, 576, 10 S. Ct. 390, 33 L. Ed. 683; Quin v. Earle (C. C.) 95 F. 728, 732; Western German Bank v. Norvell (C. C. A. 5) 134 F. 724, 726; Fidelity & Deposit Co. v. Kelso State Bank (C. C. A. 9) 287 F. 828, 829; Brennan v. Tillinghast (C. C. A. 6) 201 F. 609, 615; Marvin, Commissioner, v. Martin (C. C. A. 6) 20 F.(2d) 746, 747.

In Fidelity & Deposit Co. of Maryland v. Kelso State Bank, 287 F. 829, the Circuit Court of Appeals for the Ninth Circuit said:

"The burden of proof was upon the appellants to show that real fraud was practiced upon them. To do this they were required to show affirmatively both that the bank was actually insolvent when it received the deposits and that its managing officers then knew this to be the fact."

In Quin v. Earle (C. C.) 95 F. 728, loc. cit. 732, a case often cited, it was said:

"If the president and officers of the bank knew or believed that the bank was hopelessly and irretrievably insolvent at the time of receiving the deposit of the complainant, then a fraud was undoubtedly committed by the bank upon the complainant, for which there should be a remedy. But fraud must be proved, and is not to be presumed, and the burden of proof is on the complainant. The mere fact that the bank was in an embarrassed condition, by reason of the large indebtedness to it from its president, is not sufficient of itself to establish the fraud alleged in this case. A trader, whether a corporation or an individual, may be struggling in the straits of financial embarrassment, but with an honest hope of weathering the financial storm and of being eventually solvent. Property received by such an individual or concern in the ordinary course of business during the period of such embarrassment becomes honestly theirs, and the fact that their expectations were unrealized, and their hopes not well founded, would not fasten upon them a fraud that would vitiate their business transactions."

In the present case it was admitted that when the borrowing bank received the amount involved here from the lending bank, it, the borrowing bank, was insolvent. But it was incumbent upon the appellants to have proved more than that. They must have proved also that the officers of the borrowing bank knew that it was insolvent. The trial court found that that fact was not proved, and we think rightly so found. All that was proved was that the officers of the borrowing bank knew that the bank was financially embarrassed. They did not know that it was insolvent. It is entirely inconsistent with the assumption of such knowledge on their part that they believed it possible and were attempting to borrow $50,000 from the Federal Reserve Bank. They could not have known that their bank was insolvent, that its liabilities exceeded its assets, and at the same time have thought it possible to borrow from the Federal Reserve Bank $50,000. Nor do we think that the fact that on the day before the bank closed deposits were segregated by the officers proves that the officers had knowledge that the bank was insolvent. When that fact is considered, together with the fact that they were attempting to borrow $50,000, which latter fact indicates a belief in the solvency of the bank, it shows no more than that they considered it was possible that the bank would not be able to continue to function as a bank, notwithstanding their belief that it was not insolvent. If the second fact—that is, the segregation of deposits—stood alone, it might be sufficient to warrant the conclusion that the officers knew that the bank was insolvent, but it is robbed of its tendency conclusively to suggest such knowledge by the presence of the first fact. The segregation of funds merely indicated that the officers knew the bank was in a precarious condition, and that it might turn out to be insolvent.

The decree below is affirmed.