## STATE CENTRAL SAV. BANK v. HEMMY.

### No. 10117.

Circuit Court of Appeals, Eighth Circuit.

April 25, 1935.

E. W. McManus, of Keokuk, Iowa (James Huiskamp, Jr., of Keokuk, Iowa, on the brief), for appellant.

John C. Robertson, of St. Louis, Mo. (G. L. Norman, of Keokuk, Iowa, and Hugh D. McCorkle, of St. Louis, Mo., on the brief), for appellee.

Before STONE, SANBORN, and FARIS, Circuit Judges.

· STONE, Circuit Judge.

Appellant filed a claim based on promissory notes against the partnership estate of Eli Brody and Louis Brody, bankrupts, asserting an equitable assignment or lien entitling it to priority in payment. The claim was allowed as unsecured. From the denial of preferential payment, claimant appeals.

Two matters are presented here. One has to do with the action of the referee in denying an application to reopen the hearing for newly discovered evidence. The other is whether right to preferential payment was established by the evidence.

## Reopening Case.

After the hearing and submission to counsel for all parties of his decision by the referee, appellant filed its application to reopen the hearing to admit the testimony of E. A. Ebersole. The application was denied by the referee because of lack of diligence, the referee stating: "After I had submitted to the Attorneys my findings in this matter the Claimant then filed its Application for a rehearing on the grounds that they had found a material witness, E. A. Ebersole. Mr. Ebersole was since April 8th, 1932 to the present time either Assistant Cashier or Cashier of Claimants' Bank, and at all times had charge of the policies while in possession of the Bank. He took the place of Mr. Hiller after his death and it seems to me that the Claimant has not shown diligence in the matter in securing this testimony at the original hearing." The testimony of Ebersole was taken and transmitted with the report of the referee. Also, the testimony of James W. Huiskamp was taken (in connection with the application for reopening) and transmitted. Huiskamp was not mentioned in the application although his testimony was received in this connection. When the matter reached the trial court on petition for review, the court (without expressing any ruling as to the application to reopen) discusses the evidence of these two witnesses and apparently gave it full consideration and saying: "Had the Referee considered this evidence, however, I am unable to see how

he could have arrived at a different conclusion or finding." We must take it that this evidence was considered by the court and, therefore, is before us for consideration with the same effect as though the hearing had been reopened and the evidence received. However, had the court not considered this evidence, the ruling of the referee is abundantly sustained because of an utter lack of diligence in presenting this evidence.

## Priority of Payment.

Bankrupts owned two stores, one at Keokuk, Iowa, and the other in Tennessee; the Keokuk store being managed by Eli Brody. On April 7th, the Keokuk store burned. The next day, Eli Brody applied to appellant for a loan of $300, being already indebted to the bank. Upon that day, he executed an instrument as follows:

"Keokuk, Iowa, April 8, 1932.

"In consideration of the sum of three hundred dollars ($300.00) and other valuable considerations, we hereby agree that out of the proceeds received by us from the following list of Insurance Policies, due to a fire damaging and destroying the property covered by the policies, so much of the proceeds received from said loss as may be necessary to pay any and all obligations due by us from the State Central Savings Bank of Keokuk, Iowa.

"List of Policies.

"The Western Assurance Company, Toronto, Canada. Policy #1282—$4000.00
"National Fire Insurance Co. of Hartford, Conn. Policy #924829—$3000.00
"Universal Insurance Company. Policy #659636—$1500.00
"Western Assurance Company, Toronto, Canada. Policy #1250—$1500.00
"National Fire Ins. Co. of Hartford, Conn. Policy #625538—$3000.00
"Travelers Fire Insurance Company. Policy #5790—$1500.00
　　　　"[Signed]　Brody Bros.
　　　　　　"By Eli Brody."

The cleavage here is whether this instrument with the explanatory evidence as to handling of the policies and as to what occurred in connection with it constitute (as claimed by appellant) an equitable assignment of the policies to cover the indebtedness due the bank or (as found by the referee and trial court) simply a contract to pay such indebtedness from the proceeds of the policies realized by Brody.

The rules of law necessary to have in mind in determining whether an equitable assignment is here present are as follows: A mere agreement or promise by a debtor to pay his debt out of a specified fund belonging to or coming to him is not an equitable assignment of such fund. Sexton v. Kessler & Co., 225 U. S. 90, 98, 32 S. Ct. 657, 56 L. Ed. 995; Removal Cases, 100 U. S. 457, 477, 25 L. Ed. 593; Trist v. Child, 21 Wall. 441, 447, 22 L. Ed. 623; Dillon v. Barnard, 21 Wall. 430, 439, 22 L. Ed. 673; Christmas v. Russell, 14 Wall. 69, 84, 20 L. Ed. 762; In re Interborough Consol. Corp., 288 F. 334, 349, 32 A. L. R. 932 (C. C. A. 2); In re Clark Realty Co., 234 F. 576 (C. C. A. 7); Smedley v. Speckman, 157 F. 815 (C. C. A. 3); Long v. Farmers' State Bank, 147 F. 360, 363, 9 L. R. A. (N. S.) 585 (C. C. A. 8); Columbus, etc., R. Co. Appeals, 109 F. 177, 197 (C. C. A. 6, Judge Lurton); In re Butler's Estate, 105 F. 549 (C. C. A. 2). There must be a distinct appropriation of the fund for that purpose. Equitable Trust Co. v. First National Bank, 275 U. S. 359, 367, 48 S. Ct. 167, 72 L. Ed. 313; Sexton v. Kessler & Co., 225 U. S. 90, 97, 32 S. Ct. 657, 56 L. Ed. 995; Ingersoll v. Coram, 211 U. S. 335, 368, 29 S. Ct. 92, 53 L. Ed. 208; Laclede Bank v. Schuler, 120 U. S. 511, 7 S. Ct. 644, 30 L. Ed. 704; Peugh v. Porter, 112 U. S. 737, 742, 5 S. Ct. 361, 28 L. Ed. 859; Christmas v. Russell, 14 Wall. 69, 83, 20 L. Ed. 762; Spain v. Hamilton, 1 Wall. 604, 624, 17 L. Ed. 619; Wright v. Ellison, 1 Wall. 16, 22, 17 L. Ed. 555. Such appropriation must amount to a transfer and an establishment of a right in rem. Sexton v. Kessler & Co., 225 U. S. 90, 97, 98, 32 S. Ct. 657, 56 L. Ed. 995; Ketchum v. St. Louis, 101 U. S. 306, 25 L. Ed. 999. No particular form is necessary provided there is shown an intention to appropriate on the one hand and to receive on the other. Barnes v. Alexander, 232 U. S. 117, 120–122, 34 S. Ct. 276, 58 L. Ed. 530; Laclede Bank v. Schuler, 120 U. S. 511, 7 S. Ct. 644, 30 L. Ed. 704; Spain v. Hamilton, 1 Wall. 604, 624, 17 L. Ed. 619; Hinkle v. Wanzer, 17 How. 353, 367, 15 L. Ed. 173; Tiernan v. Jackson, 5 Pet. 580, 593, 8 L. Ed. 234; In re Dier,

296 F. 816, 819 (C. C. A. 3); In re Interborough Consol. Corp., 288 F. 334, 349, 32 A. L. R. 932 (C. C. A. 2). In proving such intention, the parties are not confined to the instrument itself if it be part only of an entire transaction, but they may show the entire situation of which the instrument was a part. Walker v. Brown, 165 U. S. 654, 664, 17 S. Ct. 453, 41 L. Ed. 865; Fourth Street Bank v. Yardley, 165 U. S. 634, 644, 653, 17 S. Ct. 439, 41 L. Ed. 855; Tiernan v. Jackson, 5 Pet. 580, 595, 596, 598, 8 L. Ed. 234. Of course, this intention must be mutual and not confined to one of the parties to the transaction. Scharnberg v. Citizens' Nat. Bank, 33 F.(2d) 673, 674 (C. C. A. 8).

The bare instrument alone is not an assignment of these policies. It contains neither words of appropriation or of transfer nor any provision for deposit of the policies with the bank as collateral or for any purpose. Standing alone it is merely a promise by the debtor to pay from any proceeds he may realize from policies which are identified. While the omission of such provisions is significant when it is considered that this instrument was drawn by an official of the bank, who must have been familiar with transactions involving security for indebtedness,[1] yet if the parties in connection with the instrument and following their conception of its meaning so acted as to show a mutual intention to appropriate the proceeds of the policies as security for this indebtedness, such may be shown to develop the situation of which the instrument was a part and thus prove intention. The language of the instrument is not so inconsistent with an assignment as to prevent this being done. Therefore, we are relegated to an examination of the evidence as to what the parties said and did which may throw light upon their intention. The question is whether such evidence so clearly proves the intention to establish an equitable assignment of or an equitable lien on the policies that the contrary determination by the referee and the court should be overthrown by this court.

The evidence for appellant was from witnesses Logan, Huiskamp, and Ebersole,

[1] As said in Re Wood's Estate, 243 Pa. 211, 214, 89 A. 975, 976: "True, no particular words or form of instrument is necessary to constitute a valid assignment; but appropriate words which in themselves are so unequivocally expressive of an intention to transfer property are of such common usage that, when these are not employed in a transaction of this kind, a very reasonable inference would be that they were not employed because not expressive of the intention of the parties."

as follows: Logan, vice president of appellant in charge of loans and bonds, testified that the policies were delivered to the bank at the time the above instrument was executed and delivered and were held until May 23d, when they were returned to Brody, who gave a receipt reciting, "Received above policies for adjustment and return of amount received," and (Logan says) with the understanding that the proceeds were to be turned over to the bank; that the policies were returned to the bank the next day and held by it until June 1, when they were sent by the bank to Christie, an insurance adjuster in a letter reading, "At the request of Mr. Eli Brody of Brody Company we are enclosing to you herewith the following policies * * *. Kindly acknowledge receipt upon carbon copy of this letter enclosed for these policies and also write Mr. Brody a letter advising him that you have received same"; that appellant never notified any of the insurance companies that it had an assignment of the policies nor ever made any demand upon such companies; that the actual transactions were between Brody and Mr. Hiller, cashier of appellant, but that Hiller consulted with witness about it. Huiskamp, a director of appellant, testified that Hiller called him into a conference with Brody regarding a loan in April; that Brody said he would turn over the policies as collateral security for his indebtedness; that Hiller said he would write the contract and Brody said he would get the policies; that witness was not there when Brody returned. Ebersole, assistant cashier at the time of this transaction, testified that he was present on April 8th when Hiller and Brody had a conversation in regard to some insurance policies; that Brody wanted $300 and said he would deliver the policies to secure his entire debt; that after the policies were delivered, he let Brody have $300; that he was present when the above instrument was delivered to appellant; that Brody said he was leaving the policies as collateral to secure his indebtedness; that witness placed them in appellant's "collateral file"; that nothing was said about leaving the policies for safe-keeping; that Brody then had a safety deposit box at the bank; that appellant issues a "safe-keeping receipt" when valuable papers are left for safe-keeping and no such receipt was here issued; that appellant did not let Brody have the $300 until the policies were delivered to it; that appellant did not let him have the $300 on the assurance of the Centerville bank; that the $300 was repaid appellant in two or three days; that appellant never had the policies after it delivered them to the adjuster.

The evidence for appellee was from Eli Brody who testified as follows:

"On the day following the fire I called at The State Central Savings Bank and saw Mr. Hiller, and he said, 'As soon as you get straightened up you are going to pay us,' and I said 'Yes'; he said 'Would you mind coming in the Bank to sign a paper,' and he said 'Nobody will know anything about it'; he said 'You owe me that money' and I should sign it. I didn't think it was anything wrong to sign the paper, and I did. I did not know what was in the paper but my signature is on the paper and the receipt. I don't remember whether I took the policies over to the bank that day or not, but I talked to Mr. Hiller, and he said it would be a good idea to leave the policies there and I could have them at any time I wanted them. I got the policies from the bank when Christie, my adjuster, wanted them. I don't think I had the policies when the bankruptcy proceedings were filed. I don't remember exactly where they were. The bank gave them to me when I asked for them.

"The $300.00 transaction was as follows: The Deputy Sheriff, Dunlavey, came over and said 'I have a warrant for you in regard to your taxes,' two hundred and ninety dollars and some cents. I said 'I haven't got it now, but as soon as I get straightened up I will pay you.' He said, 'It will have to be paid today or I will have to lock the door.' I went over to the State Central Savings Bank to talk to Mr. Hiller, but Mr. Hiller was out and I talked to Mr. Ebersole and he said 'We can't do it.' Can't loan me the money; finally, I had a life insurance policy that I showed them and said I wanted about $300.00 on that. He said this policy had money borrowed on it. I never had borrowed money on it. He said it showed it. He said 'We can't do it.' Finally Mr. Hiller came in and told me the same thing, so I called my cousin in Centerville and asked him for $300.00 and told him what I wanted it for. He said 'I will send you a check and it will come tomorrow.' I called right from the State Central Savings Bank. I told Mr. Hiller and he said he couldn't let me have it on that. He said if the bank at Centerville will call us and tell us to let you have $300.00 we will give it to you. I

called again and told my cousin to go to the bank in Centerville and tell them to, call, so the bank at Centerville called here, —I don't know whether he talked to Mr. Hiller or some one else, and finally Mr. Hiller said to me 'You sign a little paper about the $300.00' and the money was sent and the bill paid—two hundred and ninety and some cents taxes. Mr. Hiller and The State Central Savings Bank knew what I wanted the money for. I told him I wanted it for the taxes. The bank never asked any security for any of my loans and they never declined to lend me any money before that day. We never talked much about my indebtedness that day or how much it was."

The above evidence presents a clear conflict as to the arrangement between appellant and Brody concerning the policies and as to how they came to be delivered to appellant. The circumstance that the $300 was repaid within a day or so tends to support the testimony of Brody that such loan was made on the assurance of the Centerville bank. If this be true, it materially weakens the evidence of the other witnesses that the alleged collateral agreement was made in connection with that loan. In any view, there existed a clear conflict of evidence. In such a situation this court is not warranted in overthrowing the determination of a matter of fact by the referee and the trial court.

The order must be, and is, affirmed.